## The Higgin Manufacturing Company, Appellant, v. Foreman Brothers Banking Company, Appellee.

### Gen. No. 26,492.

1. BANKS AND BANKING—*when bank paying check on forged indorsement liable.* Where an agent without authority to indorse checks made to his principal transfers to a bank for a valuable consideration a check which, on its face, is payable to the principal, and which bears the false or forged indorsement of the agent in the principal's name, the bank becomes liable for conversion for the amount thereof.

2. APPEAL AND ERROR—*when questions not raised below not reviewed.* On appeal of an action against a bank for conversion of the proceeds of a check made to a principal and paid to an agent on his false or forged indorsement of the principal's name, defendant cannot contend that there was no testimony to show that the agent did not account to plaintiff for the proceeds of the check where that issue was not raised on the trial and no proof was offered by the bank to show that plaintiff received any portion of the proceeds.

3. CORPORATIONS—*when contract of unlicensed foreign corporation made outside of State enforceable.* Where a foreign corporation's agreement with an agent in this State was that he should

furnish to the corporation a contract signed by the customers for the purchase of its goods, it is to be presumed, in the absence of any testimony to the contrary, that a contract made through the agent with a customer did not become binding until approved by the corporation at its domicile, and hence was not a contract made within the State, but one made in interstate commerce, and valid and enforceable though the corporation was not licensed to do business in the State.

4. CORPORATIONS—*what not "doing business in the State" by foreign corporation.* The facts that an agent of a foreign corporation had, at the time a contract was made by him with a customer, an office in the State and that in the office was a sign bearing the name of the corporation and its name was in the local telephone directory, did not show that the corporation was doing business within the State so as to render the contract unenforceable because it was not licensed to do business in the State, where it appeared that the agent paid the rent and all expenses of the office and it did not appear who authorized the placing of the sign in the office or the name in the directory.

Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Reversed and judgment here with finding of facts. Opinion filed October 4, 1921.

JOHN L. DAVIDSON, for appellant.

D'ANCONA & PFLAUM, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

In a tort action, charging the defendant bank with the conversion of two checks, the trial court on May 22, 1920, found the defendant not guilty and entered a judgment against the plaintiff for costs. This appeal followed.

There is no substantial conflict in the evidence. Plaintiff is a corporation organized under the laws of the State of West Virginia. Its principal office and plant was located at Newport, in the State of Kentucky, where it manufactured fly screens and weather-strips which were sold in various States. It

was not licensed as a foreign corporation to do business in the State of Illinois. For several years one C. J. Guirl was its sales agent for Chicago and certain surrounding territory. On September 30, 1915, he entered into an agency agreement with plaintiff for the period of one year. This written agreement was renewed on substantially the same terms for the year ending September 30, 1917. It provided, in substance, that plaintiff would furnish screens and weather-strips as ordered by him from time to time and that he be given the exclusive right to sell the goods in the territory designated; that plaintiff would furnish him with working models, measuring rules and printed matter for his use; that he should be charged for all goods sold by him according to plaintiff's rules of measurement and at the prices named in plaintiff's printed price list; that he should canvass the designated territory at his own expense and report all sales made and furnish plaintiff with a contract signed by the customer; that plaintiff should deliver all screens in shipments of over 100 pounds f. o. b. cars at such points within such territory as he might designate, and should deliver screens in shipments of less than 100 pounds, and all weather strips, f. o. b. cars Cincinnati; and that plaintiff should pay Guirl his share in the sales, which was the difference between the amounts collected and the prices charged in said price list. The agreement contained the following clause:

"It is agreed that all orders and contracts taken in the name of the Company shall be subject to the approval of the Company, *which alone shall make all collections;* but it is understood that the Sales Agent will, when so requested, use every endeavor to secure the collection of any and all bills that may be delinquent or past due."

It appears that at Guirl's solicitation the Warner Construction Company, a corporation doing business in Chicago, had made a written contract with plaintiff

whereby it agreed to purchase, and plaintiff agreed to sell and deliver, certain screens manufactured in plaintiff's plant at Newport, Kentucky, and said screens had been delivered, and certain amounts had become due plaintiff during the months of May and June, 1917, and Guirl had several times called on the Warner Company to collect said amounts.

It further appears that on May 22, 1917, the Warner Company drew its check of that date for $510, drawn on the State Bank of Chicago, payable to the order of "Higgin Mfg. Co.," plaintiff, and delivered the same to Guirl. He indorsed the check "Higgin Mfg. Co., by C. J. Guirl" and negotiated it to the defendant bank and that bank procured the amount thereof to be paid it by said State Bank through the Chicago Clearing House. On June 26, 1917, the Warner Company drew its other check of that date for $325, drawn on said State Bank, payable to plaintiff and delivered the same to Guirl, who indorsed it the same as the former check and negotiated it to the defendant bank, which procured the amount thereof to be paid it in the same manner. Both checks, stamped "paid," were afterwards returned to the Warner Company by the State Bank. It does not appear that Guirl was given any express authority to indorse the checks in the name of the plaintiff, and plaintiff was not informed that Guirl had indorsed them until several months thereafter.

The main points relied upon by counsel for plaintiff for a reversal of the judgment are that the evidence discloses that Guirl, plaintiff's sales agent, had no authority, express or implied, to indorse said checks in plaintiff's name and that the defendant bank, having paid the same upon a false or forged indorsement, is liable to the plaintiff for the conversion of the checks in the aggregate amount thereof.

In the case of *Jackson Paper Mfg. Co. v. Commercial Nat. Bank*, 199 Ill. 151 (cited with approval in

*Crahe v. Mercantile Trust & Savings Bank*, 295 Ill. 375, 377), it is decided (a) that the authority of an agent to indorse commercial paper can only be implied where the agent would be unable to perform the duties of his agency without the exercise of such authority; (b) that the authority of an agent to collect bills and receipt therefor carries no implication of authority to indorse negotiable paper; and (c) that while authority to indorse negotiable paper may be presumed from acts of recognition in former instances, yet those acts must be known to the party setting them up, and if he accepts a check shown upon its face to be indorsed by an agent, he must prove that the facts giving color of authority to the agent were known to him. In the present case it does not appear that Guirl would be unable to perform the duties of his agency without the authority to indorse commercial paper payable to plaintiff's order, or that any such express authority was given him. Nor does it appear that any similar checks were previously indorsed by Guirl with plaintiff's knowledge and acquiescence. In the case of *Bentley, Murray & Co. v. La Salle St. Trust & Savings Bank*, 197 Ill. App. 322, it appears that the plaintiff sued the defendant bank as successor of the La Salle Street National Bank,—the defendant bank having taken over the assets and assumed the liabilities of said National Bank; that the action was for the conversion of three checks, aggregating $354, drawn by George Kleine on said National Bank and payable to plaintiff's order; that the checks were the property of the plaintiff and were paid by said National Bank and returned to Kleine, the drawer; and that they were indorsed in the name of the plaintiff by one Robertson who had no authority to indorse the same. The court *held* that the plaintiff was entitled in an action for conversion of said checks to recover of the defendant bank the amount thereof, and re-

versed the judgment of the trial court in favor of the bank and entered judgment against the bank. The court said (p. 323):

"The controlling question in this case is whether the LaSalle Street National Bank, having acquired possession of the checks through false or forged indorsement, was liable to the payee for their conversion. * * * We are of the opinion that when Robertson handed a check to the LaSalle Street National Bank and was paid the amount thereof, the bank converted such check. In *McCombie v. Davies*, 5 East 538, 540, Lord Ellenborough said: 'A man is guilty of conversion who takes my property by assignment from another who has no authority to dispose of it. For what is that but assisting that other in carrying his wrongful act into effect?' Trover may be maintained for notes and bills, and the measure of damages is prima facie the amount of their face."

In the present case, we think that when Guirl transferred to the defendant bank for a valuable consideration the two checks in question, which were payable on their face to the plaintiff and which bore the false or forged indorsement of Guirl in its name, the defendant bank converted the checks and is liable in this action to the plaintiff for the amount thereof.

Counsel for the defendant bank contend that there was no testimony given on the trial to the effect that Guirl did not turn over to plaintiff the proceeds of the checks, which he received from the bank, and that, hence, plaintiff did not prove any damages. This issue was not raised in the bank's affidavit of merits or on the trial. In the affidavit of merits the only defenses stated are that Guirl had authority to indorse said checks in plaintiff's name, and that plaintiff was a foreign corporation and not licensed to do business in this State, etc. Furthermore, in an action for conversion of notes or bills, the measure of damages, as stated in the *LaSalle Street Bank* case, *supra*, "is

prima facie the amount of their face.'' No proof was offered by the defendant bank tending to show that plaintiff had received any portion of the proceeds of the checks.

Counsel for the defendant bank also contend that, inasmuch as it appeared that plaintiff was a foreign corporation and had at no time procured a license to do business in Illinois, plaintiff had no right, under section 6 of the act of the legislature of this State, then in force, entitled ''An Act to regulate the admission of foreign corporations for profit to do business in the State of Illinois,'' to maintain any suit, ''either at law or equity upon any claim, legal or equitable, whether arising out of contract or tort in any court in this State.'' (J. & A. ¶ 2531.) We do not think that there is any merit in the contention. It appears that plaintiff made a written contract with the Warner Construction Company, of Chicago, for the sale and delivery to it of certain screens, which contract was negotiated by Guirl, and in part payment of the screens the checks in question were delivered to Guirl. Inasmuch as it was provided in Guirl's agency agreement with plaintiff that he should furnish to plaintiff a contract signed by the customer and such contract was subject to the approval of plaintiff, we think it is to be presumed, in the absence of any testimony to the contrary, that plaintiff's contract with the Warner Company did not become a binding contract until approved by the plaintiff in Newport, Kentucky, and, hence, it was not a contract made in Illinois. There was testimony to the effect that all screens sold by plaintiff were manufactured in Newport, Kentucky; that all orders for screens procured through Guirl or other agents were submitted to plaintiff's office in Newport for acceptance or rejection; that if the order was accepted the screens were manufactured in Newport and shipped to destination from

Newport, or Cincinnati, Ohio; and that the contract for the sale and delivery of the screens to the Warner Company was made in the usual manner. We think that the particular transaction must be held to be an interstate commerce one. In the case of *Lehigh Portland Cement Co. v. McLean*, 245 Ill. 327, 333, it is decided that section 6 of said Act of 1905, as to foreign corporations doing business in Illinois, applies by its terms only to such corporations as are "amenable to the provisions of this act," and does not apply to foreign corporations engaged in the business of interstate commerce, and that such corporations are therefore not precluded from using the courts of Illinois because they have not complied with the provisions of said act. (See also, *American Art Works v. Chicago Picture Frame Works*, 264 Ill. 610; *Bamberger-Stern Co. v. Anderson*, 207 Ill. App. 222.) It further appears that Guirl, in the year 1917 when he conducted his negotiations with the Warner Company, had an office in the Insurance Exchange Building, Chicago, and that in the office was a sign "Higgin Manufacturing Co.," and plaintiff's name appeared in the Chicago Telephone Directory during the months of May and June, 1917. Guirl paid the rent and all expenses of this office, and it does not appear who authorized the placing of the sign or the name in the directory. These facts do not, we think, militate against the right of plaintiff to maintain the present action. (*Journal Co. of Troy v. F. A. L. Motor Co.*, 181 Ill. App. 530, 540.)

For the reasons indicated the judgment of the municipal court is reversed and, the cause having been tried before the court without a jury, judgment is entered here in favor of the plaintiff and against the defendant, Foreman Bros. Banking Company, in the sum of $835, the aggregate amount of said two checks.

*Reversed and judgment here.*

BARNES and MORRILL, JJ., concur.

Finding of facts. We find as facts that C. J. Guirl, plaintiff's agent, had no authority to indorse the two checks in question in plaintiff's name or to negotiate them; and that neither at the time he did so nor at any time prior thereto or prior to the commencement of the present action was plaintiff doing business in the State of Illinois in violation of the Act of 1905, regulating the admission of foreign corporations for profit to do business in this State; and that the contract for the sale and delivery of the screens, in part payment of which the two checks were drawn, was not made in the State of Illinois.