## Davis & Worrell v. General Motors Acceptance Corporation.

### Opinion delivered May 22, 1922.

1. CORPORATIONS—DOING BUSINESS IN STATE.—The doing of business in this State by a foreign corporation is the exercise in this State of some of the ordinary functions for which the corporation was organized.

2. CORPORATIONS—DOING BUSINESS IN STATE.—A foreign corporation with an office outside of the State which furnished dealers in motor vehicles in Arkansas, with whom it contemplated doing business, with blank forms to be used by such dealers in selling their motor vehicles and through commercial agencies secured financial rating of the dealers and customers to whom they made sales, but had no interest in the business of the dealers from whom it purchased commercial paper and no established agency in the State, and made its contracts regarding purchase of paper and paid for same outside the State, was not doing business in the State, within the meaning of Crawford & Moses' Dig., §§ 1825-1832.

3. BILLS AND NOTES—FRAUD.—In an action on notes given for the purchase of motor trucks, evidence held not to show any fraud or misrepresentation by the seller of the trucks.

4. BILLS AND NOTES—BONA FIDE PURCHASER—DEFENSE.—In an action on notes given as part of the purchase price for motor trucks, where defendant alleged fraud and misrepresentation on the part of the seller, but the notes were transferred to plain-

tiffs before maturity and without notice of any fraud or misrepresentation, the alleged fraud and misrepresentation constituted no defense.

Appeal from Lawrence Chancery Court, Western District; *Lyman F. Reeder,* Chancellor; affirmed.

### STATEMENT OF FACTS.

The General Motors Acceptance Corporation brought this suit in equity against Davis & Worrell and the Newport Foundry & Machine Company to obtain judgment against the defendants in the sum of $1,969.20 and $1,916.48, the balance due respectively on two promissory notes given for two motor trucks, and to foreclose its vendor's lien on the same.

Davis & Worrell defended on the ground that the General Motors Acceptance Corporation could not maintain the suit because it was a foreign corporation and had not complied with our statute regulating such corporations, and that the sale of the motor trucks to them by the Newport Foundry & Machine Company had been induced by false representations.

The General Motors Acceptance Corporation is a foreign corporation organized under the laws of the State of New York and it has a branch office at Dallas, Texas. On the 17th day of May, 1920, Robert Davis and Frank Worrell, doing business as Davis & Worrell, at Imboden, Ark., purchased from the Newport Foundry & Machine Company of Newport, Ark., two motor trucks, and after making a cash payment executed their negotiable promissory notes for the balance of the purchase money. Title to the motor trucks was retained in the seller until the balance of the purchase price was paid.

L. C. Barber was a witness for the plaintiff. According to his testimony he was assistant credit manager for the General Motors Acceptance Corporation at Dallas, Texas, and the purchase of the notes in question was made in June, 1920, before the notes became due. The notes were purchased at Dallas, Texas, for value received before maturity. There is a balance due on one

truck of $1,969.20 and on the other of $1,916.48. It was the custom of the plaintiff to furnish blank forms of notes to the Newport Foundry & Machine Company of Newport, Ark., and to purchase notes executed to that company by purchasers of motor vehicles from it. The plaintiff has no agency in the State of Arkansas, but buys commercial paper from approximately forty concerns selling motor vehicles in the State of Arkansas. The plaintiff does not do business with any concern in Arkansas that does not handle the products of the General Motors Corporation. That corporation, however, is not owned by the plaintiff, and it does not appear whether the two corporations have the same directors and stockholders. The plaintiff company is not operated to handle the financial end of the General Motors Corporation. It purchases commercial paper from various persons and corporations in the State of Arkansas and elsewhere which sell motor vehicles. It requires the dealers from whom it buys the commercial paper to make a financial statement, and the amount of credit extended to such dealer depends upon such financial statement. The Newport Foundry & Machine Company had made such a statement, and the plaintiff had agreed to extend a line of credit to it. The plaintiff makes an investigation of the dealer's financial condition and gives him a rating on this. The dealer indorses the commercial paper to the plaintiff. The investigation of the dealer is made through references given by him and by reports from commercial agencies.

Davis & Worrell were investigated by the plaintiff before it purchased the notes in question. The notes in question were purchased from the Newport Foundry & Machine Company, and that company indorsed the notes. Blank forms of contracts are furnished to dealers from whom the plaintiff contemplates buying notes. The plaintiff requires a purchaser's statement on the back of each contract. It then investigates in every instance both

the maker and the indorser of the commercial paper through various commercial agencies, before buying the security.

The approval of the paper in the present case was made in Dallas, Texas, and the purchase of it was made there; and the money was paid outside the State.

J. V. Isaacs, the manager of the Newport Foundry & Machine Company, was also a witness for the plaintiff. According to his testimony he sold the notes in question to the plaintiff at Dallas, Texas, and the payment was made through a bank at Chicago, Ill. The notes were given for sale of motor trucks to Davis & Worrell and were indorsed by the Newport Foundry & Machine Company to the General Motors Acceptance Corporation. The Newport Foundry & Machine Company was not the agent of the General Motors Acceptance Corporation, and that company did not have anything to do with the business of the Newport Foundry & Machine Company. The Newport Foundry & Machine Company made arrangements with the plaintiff for a line of credit with it. It had made a statement of its financial condition to the plaintiff and had a general line of credit based on that statement and the investigation of its condition made by the plaintiff.

According to the testimony of the defendants, Davis & Worrell, the sale of one of the trucks was procured by fraudulent representations. Evidence was adduced by the plaintiff to contradict this testimony. The evidence on this phase of the case will be stated more particularly in the opinion when we come to discuss the question of whether or not the sale should be set aside on account of the fraudulent representations of the seller.

The court found the issues in favor of the plaintiff and a decree was entered accordingly.

To reverse that decree Davis & Worrell have duly prosecuted an appeal to this court.

*Mehaffy, Donham & Mehaffy,* for appellant Davis & Worrell.

Appellee had no capacity to sue on the notes, as it was a foreign corporation doing business in this State without having complied with the law. 128 Ark. 211. By the conduct of its business appellee has violated act 313 of Acts 1907. See 115 Ark. 166; 124 Ark. 539. The defect in the notes was inherent, and a subsequent purchaser must take notice of such defect. 136 Ark. 52.

Appellee was not an innocent purchaser of the notes, as it knew exactly how the Newport Foundry & Machine Company conducted its business, and knew that that company was selling the trucks as new, when in fact one of them was second-hand. See cases in 121 Ark. 250; 110 Ark. 578; 97 Ark. 537; 105 Ark. 281.

*Boyce & Mack,* for appellant, Newport Foundry & Machine Company.

There was no fraud in the sale of the trucks and no misrepresentation. They were sold under a written contract. Oral warranties or agreements could not properly be shown. 45 Ark. 284; 108 Ark. 254.

*Rogers, Barber & Henry,* for appellee.

The appellee was not engaged in an intrastate business. Its contracts were made and money paid in another State, thus carrying on an interstate business not subject to regulation by this State. See 57 Ark. 24; 206 Fed. Rep. 802; 55 Ark. 625; 160 U. S. 167; 92 Ala. 145; 98 Ala. 409; 54 Ark. 566.

HART, J. (after stating the facts). It is first contended by counsel for Davis & Worrell, the defendants, that the plaintiff, General Motors Acceptance Corporation, is not entitled to maintain this suit because it has not complied with our statute regulating foreign corporations doing business in this State. Crawford & Moses' Digest, secs. 1825-32 inclusive.

It appears from the record that the plaintiff has not complied with our statute prescribing the terms upon which foreign corporations may do business in this State.

It is the contention of the plaintiff that the transaction in question does not bring it within the prohibition of the statute. The statute does not specify what particular acts shall constitute doing business in this State by a foreign corporation. The general holding, however, is that the doing of business is the exercise in this State of some of the ordinary functions for which the corporation was organized. In other words, it is the actual doing or engaging in business in this State by such corporation.

In *White River Lumber Co.* v. *Southwestern Improvement Assn.*, 55 Ark. 625, it was held that a foreign corporation is not doing business within the meaning of the statute by entering into a contract with a resident thereof, where the contract is made and is to be performed elsewhere.

So too in *State Mutual Fire Ins. Assn.* v. *Brinkley Stave & Heading Co.*, 61 Ark. 1, it was held that a contract made with a foreign insurance company through its local soliciting agent at a place outside of the State is not doing business within the State within the meaning of the statute. These cases hold that the rule is not altered by the fact that the contracts relate to property in this State.

Again, in *Scruggs* v. *Scottish Mortgage Co.*, 54 Ark. 566, it was held that a foreign corporation, in lending money on land in this State, is not doing business in the State, within the meaning of sec. 11, art. 12 of the Constitution of 1874, if the agreement for the loan was made in another State, and the notes and securities delivered and the money paid there.

In *Bamberger* v. *Schoolfield,* 160 U. S. 149, it was held that a foreign corporation is not doing business in a State by purchasing in another State negotiable securities executed within the first State.

In the application of the principle stated in the illustrative cases given above, we agree with the chancellor that the transaction in the present case does not come

within the prohibition of our statute regulating foreign corporations doing business in this State.

It is true that it was a part of the business of the plaintiff corporation to discount notes of this character, and that it did discount notes purchased from about forty dealers in motor vehicles in the State of Arkansas. The plaintiff was organized under the laws of the State of New York and had a branch office at Dallas, Texas, where it transacted its business with residents of the State of Arkansas. It furnished dealers of motor vehicles in Arkansas with whom it contemplated doing business with blank forms of contracts to be used by such dealers in selling their motor vehicles. There was a place on such form for the purchaser of the motor vehicle to make a statement of his financial condition. The dealer was required to send to the plaintiff at Dallas, Texas, a statement of his financial condition, and an investigation of his financial condition was also made through reports by commercial agencies and otherwise. Then the plaintiff would agree to extend a general line of credit to such dealer. The dealer in making a sale would take the note of the purchaser on one of the blank forms furnished by the plaintiff. This was all done, however, to better enable the plaintiff to pass upon the securities offered it for discount. The plaintiff had no interest whatever in the business of the dealers from whom it bought such commercial paper. It had no established agency in this State. In each instance the paper was sent to its office in Dallas, Texas, and accepted there. The money was paid there, or through a bank in Chicago upon orders of the home office in New York. Thus it will be seen that the contract was made and the money paid in each instance outside of the State. The applications for sale of commercial paper were received by the plaintiff at its office outside of this State. They were passed upon there and accepted or rejected there. The plaintiff had no agency in this State, and the mere fact that it acted upon applications coming through residents

in this State would not constitute doing business in this State within the meaning of the statute.

As we have said, it does not appear that the plaintiff ever had an agency in this State, and the most that can be said is that it actually accepted discounts from forty different dealers in motor vehicles. The negotiations, however, were conducted by the dealers themselves, who, although residents of this State, were not in any sense the agents of the plaintiff, and the plaintiff was not in any way connected with their business or obligated to purchase at a discount or otherwise the notes which such dealers should take for motor vehicles sold by them.

It is true that the furnishing of blank contracts to be used by the dealers in selling their motor vehicles and in purchasing the notes given for said motor vehicles tended to further the business of such dealers, but this did not make such transactions fall within the terms of the act. This would not be the controlling test. The test is, was the transaction of the business such that the corporation was for the time being, through its agents or otherwise, within the State for the purpose of doing business?

In reaching this conclusion we do not mean to say that a foreign corporation must have an agency established in this State to bring it within the operation of our statute regulating foreign corporations doing business in this State; but we do hold that in a case like this, where the foreign corporation had its place of domicile in another State and discounted commercial paper of parties with money paid out in such other State on applications made to it there through dealers in this State, such transactions do not constitute doing business in this State by such foreign corporation.

It is also insisted by counsel for Davis & Worrell that the decree should be reversed because one of the motor trucks was purchased through the false representations of the Newport Foundry & Machine Company. Frank Worrell, one of the members of the firm, testified

that this truck was represented to him to be a new truck, and that when he began to use it he found that it had been used for at least six months, and that some of its parts showed wear, and that it was altogether in such a defective condition that it could not be used. Two of his employees corroborated his testimony.

On the other hand, the manager of the Newport Foundry & Machine Company testified that Worrell was a man of several years' experience in the use of motor trucks and that he made a thorough examination of the one in question before he purchased it. The truck was never repainted, as testified to by Worrell. At the request of Worrell the truck was changed so as to put a dump body upon it, and it was probably touched up to cover up the scars made in making the change. The car was driven through the country from Newport to Imboden at the time it was purchased, but it was entirely new. An employee of the company who drove the truck through the country and delivered it, testified that it was new and all right.

The chancellor found the issue of fraudulent representations in favor of the plaintiff, and when we consider that Worrell had had several years' experience in running motor trucks and made a thorough examination of the one in question, it can not be said that the finding of the chancellor that he was not induced to buy it by the false and fraudulent representations of the seller was against the preponderance of the evidence.

Moreover, the plaintiff purchased the note given for the purchase price of the motor truck for value before maturity, and it does not appear from the record that it had any knowledge of any false representations which induced the sale of the motor truck, if any such were made by the seller.

As we have already seen, the plaintiff was not interested in the sale of the motor trucks and had nothing whatever to do with the sale thereof.

There is a dispute between the parties to this lawsuit as to what testimony properly appears in the record; but, inasmuch as we have accepted the abstract of the testimony made by appellants, and have reached the conclusion that the decree should be affirmed, we have decided not to go into the dispute between the parties in this respect or to consider which is right.

From the conclusions we have reached, it follows that the decree must be affirmed.