## CHARLESTON.

General Motors Acceptance Corporation *v.* The Shady-
side Coal Company

(No. 5699)

Submitted September 7, 1926.    Decided October 19, 1926.

Corporations—*Foreign Corporation, Financing Purchase of Motor
    Vehicles by Dealers in State Through Loans Secured by
    Title to Vehicles, Consummated at Branch Offices Outside
    State, is Not "Doing Business in State," Though Loans
    Were Secured and Collected Through Local Banks (Code,
    c. 54, § 30).*

A foreign corporation financing the purchase of motor
vehicles by distributors and dealers in West Virginia through
loans, secured by title to the vehicles, granted and consum-
mated at its branch offices outside the State, is not "doing
business" in this State within the meaning of Section 30,
Chapter 54, Code, although the loans are secured and col-
lected through the local banks of the purchasers under direc-
tions from the corporation.

Error to Circuit Court, Ohio County.

Interpleader by the General Motors Acceptance Corpor-
ation against the Shadyside Coal Company, instituted before
a justice of the peace under Code, c. 50, §151.    Judgment of
the circuit court dismissing the action, and plaintiff brings
error.

*Reversed; judgment entered.*

*W. F. Keefer,* for plaintiff in error.
*George A. Blackford,* for defendant in error.

Litz, President:

Upon application of the plaintiff in an action of inter-
pleader instituted before a justice of the peace under Sec-
tion 151, Chapter 50, Code, this writ of error was awarded
to the judgment of the circuit court entered upon its finding
in lieu of a jury, dismissing the action.

June 19, 1924, J. M. Hannon purchased a Chevrolet automobile from the Starcher Chevrolet Company, of Grafton, under written contract retaining title in the vendor to secure the payment of deferred purchase money notes. In an action instituted December 15, 1924, before a justice of the peace of Ohio county, the Shadyside Coal Company attached the machine as the property of Hannon. The General Motors Acceptance Corporation filed a petition in the proceeding asserting claim to the automobile as owner of the deferred purchase money notes, secured as aforesaid, theretofore assigned to it by the Starcher Company. The Coal Company answered the petition by denying the right of the plaintiff to maintain the action, on the ground that it was a foreign corporation doing business in the State of West Virginia without having complied with Section 30, Chapter 54, Code, requiring a foreign corporation doing business in the State to file for record in a county in which it does business a copy of its charter and certificate from the auditor showing that it has filed with him a copy of its articles of association, as prerequisite to the right of instituting or maintaining any action, suit or proceeding in this State. The dismissal of the action of interpleader by the circuit court resulted from its finding that the plaintiff was doing business in the State within the meaning of Section 30, Chapter 54, Code, it being admitted that the plaintiff is a foreign corporation and has not complied with the requirements of the statute.

Plaintiff is a New York corporation having its principal place of business in the city of New York. It maintains branch offices at Pittsburgh, Pa., Cleveland, Cincinnati and Dayton, Ohio, and Washington, D. C., and other places outside West Virginia; furnishing financial assistance to approved distributors and dealers in West Virginia and other States who purchase motor vehicles manufactured by the General Motors Corporation, under three general plans following: One, known as the "Warehouse Plan", contemplates the storage of motor vehicles in public licensed warehouses selected by the purchasers and approved by plain-

tiff, until the money advanced by the plaintiff has been fully repaid. The loan is evidenced by the note of the purchaser secured by separate warehouse receipts for each vehicle stored. Upon payment of a sufficient amount to redeem one vehicle the warehouse receipt therefor is delivered to the purchaser by the local bank designated by the purchaser. The second, known as the "Floor Plan", contemplates delivery of the vehicles to the purchaser upon his executing a note, or accepting trade acceptances, for the money advanced by the plaintiff, and signing a trust receipt retaining title as security for the payment of the promissory note or trade acceptances, and providing that the purchaser shall not use the vehicles except for the purpose of display in his show room. The purchaser obtains release of title upon payment to the local bank of the note or trade acceptances.

The third involves the usual conditional sale of motor vehicles by a dealer and assignment by the vendor of the contract and purchase money notes to the plaintiff at one of its established offices as in this case.

The details of operation under the warehouse and floor plans follow:

(1)  BILL OF LADING SHIPMENTS UNDER WAREHOUSE PLAN FROM MANUFACTURER TO DISTRIBUTOR:

The manufacturer, holding the application of the distributor for wholesale credit, previously approved by the plaintiff, being instructed by the distributor to ship under said application for credit, ships the motor vehicles to the distributor on order bill of lading, sending to the distributor's local bank bill of lading, promissory note for 90% of the invoice price, trust receipt and sight draft for 10% of the invoice price plus plaintiff's charge. On arrival of the motor vehicles the dealer pays the sight draft, signs the note, and the bank delivers the bill of lading to the warehouseman and receives a separate negotiable warehouse receipt for each car. The bank returns the warehouse receipts, promissory notes and proceeds of the sight draft to

the manufacturer, who forwards to the plaintiff the note, warehouse receipts and copy of invoice. After approving them, the plaintiff retains the documents and mails check for the amount of the note, less charges, to the manufacturer.

(2)   BILL OF LADING SHIPMENTS UNDER FLOOR PLAN FROM MANUFACTURER TO DISTRIBUTOR:

The manufacturer, holding the application of the distributor for wholesale credit, previously approved by the plaintiff, being instructed by the distributor to ship under said application for credit, ships the motor vehicles to the distributor on order bill of lading, sending to the distributor's local bank bill of lading, promissory note for 85% of the invoice price, trust receipt, and sight draft for 15% of the invoice price plus plaintiff's charge. On arrival of the vehicles the dealer pays the sight draft, signs the note and trust receipt, and receives the bill of lading; the bank returns the trust receipt, promissory note and proceeds of the sight draft to the manufacturer, who forwards to plaintiff the promissory note, trust receipt and copy of invoice. After approving them the plaintiff returns the documents and mails the amount of the promissory note, less charges, to the manufacturer.

(3)   VEHICLES PURCHASED FROM MANUFACTURER BY DISTRIBUTOR AND DELIVERED AT THE FACTORY UNDER FLOOR PLAN:

The manufacturer holding the application of the distributor for wholesale credit previously approved by the plaintiff, being requested by the distributor to deliver to it vehicles under said application for credit, upon signing a promissory note for 85% of the invoice price, paying 15% thereof plus plaintiff's charges, and executing trust receipt, the distributor receives from the manufacturer at its plant possession of the vehicles. Upon receipt from the manufacturer of these documents and approval thereof by the plaintiff, it mails to the manufacturer check for the amount of the note less its charge.

(4) BILL OF LADING SHIPMENT UNDER FLOOR PLAN FROM DISTRIBUTOR TO DEALER:

The distributor holding the application of the dealer for wholesale credit previously approved by the plaintiff, being instructed by the dealer to ship under said application for credit, ships the motor vehicles to the dealer on order bill of lading, sending to the dealer's local bank bill of lading, trust receipt, trade acceptances for 85% of the invoice price, and sight draft for 15% of the invoice price plus the plaintiff's charge. On arrival of the motor vehicles the dealer pays the sight draft, signs the trust receipt, accepts the trade acceptance and receives the bill of lading. The bank returns the trust receipt, trade acceptance and proceeds of the sight draft to the distributor, who indorses the trade acceptances, forwarding the same, together with trust receipt and copy of invoice to plaintiff, who upon receipt and approval of these documents mails to the distributor check for the full amount of the trade acceptance less its charge.

(5) BILL OF LADING SHIPMENTS UNDER THE WAREHOUSE PLAN FROM DISTRIBUTOR TO DEALER:

The arrangement for these shipments is similar to that under (2), except that the distributor indorses the note executed by the dealer before forwarding it to plaintiff for its approval.

(6) VEHICLES PURCHASED BY DEALER FROM DISTRIBUTOR AND DELIVERED AT DISTRIBUTOR'S PLACE OF BUSINESS UNDER THE FLOOR PLAN:

This arrangement for these shipments is practically the same as (3), except that the trade acceptances are indorsed by the distributor before delivery to plaintiff for its approval.

(7) SHORT CUT BILL OF LADING SHIPMENTS UNDER FLOOR PLAN FROM MANUFACTURER TO DEALER FOR ACCOUNT OF DISTRIBUTOR:

The distributor holding the application of dealer for wholesale credit, previously approved by plaintiff, being requested by dealer to have shipped under said application for

credit the motor vehicles covered by the application, instructs the manufacturer to ship to the dealer such motor vehicles, sending the invoice to the distributor, the bill of lading and copy of invoice to the plaintiff. Upon receipt of invoice the distributor fills in on the form furnished by plaintiff trade acceptance for 85% of the dealer's invoice price and, after indorsing it, sends the same to the plaintiff, who upon receipt and approval thereof, mails the trade acceptance, trust receipt and sight draft for 15% of dealer's price, plus charges, to the dealer's local bank. Upon arrival of the motor vehicles the dealer pays the sight draft, executes the trade acceptance and trust receipt, and receives bill of lading from the bank, which returns the trust receipt and trade acceptance to plaintiff with the proceeds of the draft. Upon receipt and approval of these documents the plaintiff remits to the manufacturer for credit to the distributor's account the manufacturer's price less the charges and to the distributor the difference between the manufacturer's price and the distributor's price to the dealer.

(8)   SHORT CUT DRIVE-AWAY SHIPMENTS UNDER FLOOR PLAN FROM MANUFACTURER TO DEALER FOR ACCOUNT OF DISTRIBUTOR.

The distributor holding the application of dealer for wholesale credit, previously approved by the plaintiff, having been requested by the dealer to send the necessary forms and instructions to manufacturer for delivery to dealer for drive-away certain vehicles covered by the application, after partially filling out bill of sale, trade acceptance, trust receipt and agreement to pay 15% of invoice price and plaintiff's charges, mails same to the manufacturer who, when dealer calls for the vehicles, collects the 15% cash payment plus plaintiff's charges, fills in the description of the motor vehicles on the bill of sale and trust receipt, secures dealer's signature to trust receipt, trade acceptance and agreement, and then forwards to plaintiff the completed bill of sale, trade acceptance, trust receipt and agreement, together with copy of invoice showing manufacturer's price to dis-

tributor. Upon receipt and approval of these documents the plaintiff mails manufacturer check for difference between cash received from the dealer and amount of invoice from manufacturer to distributor, and sends check to distributor for his profit.

(9) SHORT CUT BILL OF LADING SHIPMENTS ON WAREHOUSE PLAN FROM MANUFACTURER TO DEALER FOR ACCOUNT OF DISTRIBUTOR:

The distributor holding the application of the dealer for wholesale credit, previously approved by the plaintiff, having been instructed by the dealer to ship to his local warehouse certain vehicles covered by said application, instructs the manufacturer to ship the vehicles, sending original invoice to distributor, and bill of lading, with copy of invoice at distributor's price, to the plaintiff. Upon receipt from the manufacturer the distributor, after partially filling out and indorsing trade acceptances for 90% of the dealer's invoice price, mails plaintiff the acceptances, with copy of invoice to the dealer. Upon receipt, plaintiff fills in the balance of the form, and sends all the documents, including sight draft for 10% of dealer's price plus plaintiff's charges, with bill of lading to dealer's local bank. Upon payment of the sight draft and execution of the documents by the dealer the bank delivers the bill of lading to the warehouseman in exchange for separate warehouse receipts for each vehicle, and then sends the warehouse receipts, trade acceptances and proceeds of the sight draft to the plaintiff, who remits to manufacturer for credit of distributor's account the manufacturer's price, and to distributor the difference between this amount and the invoice price to dealer.

The written applications of the dealers and distributors for wholesale credit and all other papers used in consummating the loans by the plaintiff to the purchasers of automobiles in West Virginia are received and approved by the corporation at its branch offices outside of the State; the only acts occurring within the State being the local bank transactions hereinbefore detailed, which are confined to

the acceptance of security and repayment of the loans. The collection in this State by a foreign corporation of debts due it for goods sold or otherwise contracted does not constitute doing, transacting, carrying on, or engaging in business within the meaning of the statute under consideration; nor does the acceptance in the State of evidence of such debts, or the taking of security therefor come within the meaning of the statute. 14-a C. J., p. 1278.

The courts considering the question as to whether or not the plaintiff's methods of transacting business in States other than those in which it maintains offices constitutes "doing business" within the meaning of statutes similar to ours (Section 30, Chapter 54, Code), have ruled in the negative. *Jones* v. *General Motors Acceptance Corporation,* 205 Ky. 227, 265 S. W. 620; *General Motors Acceptance Corporation* v. *Lune,* 60 Utah 247, 208 Pac. 502; *Davis & Worrell* v. *General Motors Acceptance Corporation,* 153 Ark. 626, 241 S. W. 44, 47.

We are clearly of the opinion that the plaintiff is not doing business in this State within the meaning of the statute.

The judgment of the circuit court therefore will be reversed, and judgment entered here for the plaintiff.

*Reversed; judgment entered.*