Industrial Acceptance Corporation, Appellee, v. Mary A. Haering, Appellant.

Gen. No. 8,265.

Opinion filed January 24, 1929.

J. IVAN COLE, for appellant.

E. A. DONNELLY, PRATT, HEFFERNAN & RAMSEYER, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

In this case the Industrial Acceptance Corporation, appellee, commenced this suit in replevin in the circuit court of McLean county against the appellant, Mary A. Haering, to recover an Oakland landau sedan of the value of $1,000, claiming the right of possession and property of the automobile in question by virtue of the lien of a chattel mortgage held by the appellee, the property being wrongfully detained by the appellant, as averred in the declaration. The declaration also contains a count in trover for the alleged wrongful conversion of the automobile in question, the sheriff having been unable to recover the automobile from the appellant under the writ. To the declaration the appellant filed the general issue, which was afterwards with-

drawn and substituted therefor a plea in abatement of the suit, which plea is as follows:

"And the said Mary A. Haering, by J. Ivan Cole, her attorney, comes and defends, etc., and by leave of court first had and obtained, and by agreement of counsel, files this, her amended plea, and prays judgment of the said writ because she says that the Industrial Acceptance Corporation, plaintiff herein, of South Bend, Indiana, is a foreign corporation organized in Virginia on, to wit, January 1, 1925, and having its operating office at South Bend, Indiana. That it is not engaged in banking, insurance, building and loan or the business of acting as surety.

"That plaintiff corporation was organized for profit for the purpose of loaning money and of purchasing at a discount commercial paper secured by chattel mortgages or other lien instruments upon motor vehicles.

"That it maintains a field service organization operating out of and under the direction of its operating office of South Bend, Indiana. The men operating in its field service division travel through the designated territories, call upon Studebaker dealers, exclusively, for the purpose of inducing said dealers to offer for sale to the Industrial Acceptance Corporation the dealer's notes secured by contracts, chattel mortgages or other lien instruments covering motor vehicles, but who have no authority to purchase said notes on behalf of plaintiff. To explain to such dealers as wish to avail themselves of the privilege of discounting their purchaser's notes with plaintiff corporation, the plan of operating of the business of plaintiff corporation, so far as it affects the dealer, and to explain the requirements and conditions to be followed by the dealer in obtaining and forwarding such commercial paper. To obtain details of any complaint made by any dealer forwarding the paper to Industrial Acceptance Corporation and to forward such details to the South Bend

office of the plaintiff corporation for consideration and any necessary adjustment.

"And defendant avers that as a condition precedent a dealer who contemplates offering his commercial paper to plaintiff corporation must make a financial statement of his financial condition and submit the same to the nearest branch office of the Studebaker Corporation of America, who forwards it to the home office of the Studebaker Corporation of America at South Bend, Indiana, with a recommendation of the branch office for credit for the dealer. That the home office of said Studebaker Corporation makes whatever investigation it wishes and forwards the financial statement, together with its recommendation and the branch office recommendations, to the operating office of the Industrial Acceptance Corporation, also at South Bend, Indiana. If the recommendation proves to be satisfactory to plaintiff corporation such dealer is so notified by the plaintiff that he may forward his commercial paper to plaintiff for acceptance or rejection.

"Defendant avers, however, that there is no obligation to the dealer to offer any notes or contracts to the plaintiff corporation, nor is there any obligation on the plaintiff corporation to purchase from the dealer any such offers as may be made by such dealer.

"Defendant further avers that the dealer, in offering notes and mortgages to the plaintiff corporation, may do so under two different plans according to the arrangement made by plaintiff corporation with the dealer at the time the dealer's credit is accepted by plaintiff corporation. The said two plans being described as follows:

"Mail Plan. Under this plain the dealer is required to obtain a chattel mortgage on the automobile sold to secure the chattel mortgage note for the deferred installments, which the purchaser of the car is to pay. The mortgage is properly signed by the purchaser,

acknowledged, recorded by the dealer in the Recorder's office of the proper county, and assigned by the dealer to plaintiff corporation. The mortgage and the note also properly executed and endorsed by the dealer are sent by mail to the Industrial Acceptance Corporation, plaintiff, at South Bend, Indiana, and if accepted a check is sent to the dealer for the agreed purchase price of the note. If rejected the note and chattel mortgage are returned to the dealer from whom they were received.

"The Draft Plan. Securing of the chattel mortgage and note and the assignment to the Industrial Acceptance Corporation, plaintiff, of the mortgage and the endorsing of the note are identical with the facts as explained in paragraph next above described 'Mail Plan.' Under this plan, however, instead of sending the note and contract through the mail, the dealer places the chattel mortgage and note in a draft envelope form supplied by plaintiff corporation. This envelope is a sight draft drawn upon plaintiff corporation, payable at the First National Bank of South Bend, Indiana. The dealer deposits this draft envelope, with the papers enclosed at dealer's bank, which forwards it through the usual banking channels to South Bend, where the enclosed papers are examined by plaintiff corporation and if the papers are properly executed the draft is accepted and paid by plaintiff corporation at the First National Bank of South Bend. Said draft plan provides, however, as stipulated on the face of the draft, that in the event the offer submitted by the dealer is, upon further investigation of the purchaser's credit or for any other reason, unsatisfactory to the plaintiff corporation, the plaintiff has the right to redraw upon the dealer for the amount of the paid draft, which draft the dealer obligates himself to pay upon presentation.

"Defendant avers that in determining the advisability of accepting or rejecting paper so submitted by

dealers, plaintiff corporation advised with national and local credit bureaus with reference to the financial standing of makers of paper submitted for purchase.

"Defendant further avers that in case of a purchase of such paper by plaintiff corporation, the maker or makers of such paper are notified by plaintiff that it has purchased the note and directs them by mail to make payments to it, the plaintiff, at South Bend, Indiana. It furnishes each purchaser with a statement of the amount of the note, the date of maturity and the amount of each installment. Form notices and letters are principally used by plaintiff corporation, being sent through the United States mail from South Bend, Indiana. That the collection of notes purchased by plaintiff corporation is principally carried on by mail. These notes being all payable to the order of the dealer, who has in turn endorsed them to plaintiff corporation, said notes being payable at the office of plaintiff corporation at South Bend, Indiana.

"Defendant further avers that in case there is a serious default in the payment of an installment due on such paper, the paper is mailed to any attorney living in the vicinity of the maker of the paper with instructions to such attorney to use whatever means are necessary to effect collection.

"Defendant further avers that the plaintiff corporation and Studebaker Corporation of America are two separate and distinct corporations.

"Defendant avers that since the organization of said plaintiff corporation, as aforesaid, it has continually and is now carrying on its said business in the manner as above alleged with citizens of the State of Illinois, purchasing paper and refusing to purchase paper at its home office in South Bend, Indiana, secured by chattel mortgages on automobiles purchased and in the possession of citizens of the State of Illinois from automobile dealers, also citizens of said state. And in that connection defendant avers that on, to wit,

the 16th day of October, 1926, at Bloomington, Illinois, one John Barr executed and delivered his promissory note in the sum of five hundred seventy-five ($575.00) dollars, payable in twelve equal monthly installments to the order of John Whittington, at the office of the Industrial Acceptance Corporation of South Bend, Indiana. That said note was given to evidence the purchase price of the automobile described in plaintiff's declaration and in each count thereof. That to secure said note so delivered the said John Barr executed a chattel mortgage to the said John Whittington, conveying said automobile so described in plaintiff's declaration and in each count thereof, then and there on the date last above mentioned, and delivered the same to the said John Whittington. That thereupon, then and there, the said John Whittington delivered said automobile to the said John Barr. That the said John Barr acknowledged said chattel mortgage in due form of law and that the said chattel mortgage was recorded by the said John Whittington in accordance with the statute in such case made and provided. That said note and mortgage were forwarded to plaintiff corporation at its office in South Bend, Indiana, and that said paper, upon investigation as aforesaid, was then and there purchased by said plaintiff corporation for value and before maturity at its said office in South Bend, Indiana.

"That subsequently thereto this defendant purchased said automobile described in plaintiff's declaration, and in each count thereof, while said mortgage was a valid and existing lien against said car.

"And defendant avers the fact to be that the plaintiff corporation herein is a foreign corporation. That said plaintiff corporation had not at the time of the purchase of said note aforesaid nor at any time since has it complied with the statute, being an act in relation to corporations for pecuniary profit, and approved June 28, 1919, and particularly section 80, as to foreign

corporations in connection therewith. By means whereof, defendant avers that plaintiff ought not to be permitted to maintain its said suit, either at law or in equity in any of the courts of this state, and that she, the said Mary A. Haering, is ready to verify; wherefore, she prays judgment of the said writ, and that the same may be quashed, etc."

The appellee thereupon filed a demurrer to the plea in abatement, alleging as special reasons that: "The plea shows on its face that plaintiff corporation is not transacting business in the State of Illinois within the meaning of the statutes, being Chapter 32, Cahill's Illinois Statutes." Also: "That the business of plaintiff corporation, as disclosed by the plea, is in its essential characteristics commerce among the states within the meaning of the Constitution of the United States."

The trial court sustained appellee's demurrer, and appellant abided by his plea, and thereupon judgment was rendered against the appellant in the sum of $1,000. This appeal is prosecuted from the order sustaining the demurrer and the judgment.

The only question involved in this appeal is whether the facts averred in the plea show that the appellee, a foreign corporation, in acquiring the commercial paper and chattel mortgage referred to in the plea, was engaged in business in this State in violation of section 80 of the General Corporation Act, which is as follows': "Each foreign corporation organized for pecuniary profit (except banking, insurance, building and loan and surety companies), not now licensed to do business in this State, shall, before it transacts any business or maintains an office in this State, procure a certificate of authority therefor from the Secretary of State. No certificate shall issue to any foreign corporation authorizing it to transact business in this State until the same portion of its capital is paid in as

is required of like corporations organized under the laws of this State." Chapter 32, sec. 80, Callaghan's Illinois Statutes Annotated. It is clear from the facts averred in the plea in abatement that the appellee has not maintained any office in this State nor had any agent in this State for the transaction of its business; that the office which it maintains for the transaction of its business, which is the loaning of money and purchasing at a discount commercial paper secured by chattel mortgages or other lien instruments upon motor vehicles, is situated at South Bend in the State of Indiana. It further appears that the negotiations for the purchase and assignment of the notes and chattel mortgage in question were carried on and consummated at South Bend in the State of Indiana. We are of opinion, therefore, that the transaction by which the appellee acquired the notes and chattel mortgage in question and became the holder thereof does not constitute a transaction of business in this State as set forth in the act referred to. *Pembleton v. Illinois Commercial Men's Ass'n*, 289 Ill. 99; *Bamberger, Bloom & Co. v. Schoolfield*, 160 U. S. 149; *Higgin Mfg. Co. v. Foreman Bros. Banking Co.*, 222 Ill. App. 29; *Commercial Investment Trust, Inc. v. Gaines*, 193 N. C. 233, 136 S. E. 609; *Davis v. General Motors Acceptance Corp.*, 153 Ark. 626, 241 S. W. 44; *General Motors Acceptance Corp. v. Lund*, 60 Utah 247, 208 Pac. 502; *Jones v. General Motors Acceptance Corp.*, 205 Ky. 227, 265 S. W. 620; *General Motors Acceptance Corp. v. Shadyside Coal Co.*, 102 W. Va. 402, 135 S. E. 272; *Commercial Credit Corp. v. Boyko*, 103 N. J. L. 620, 137 Atl. 534; *Southern Discount Co. v. Rose* (Tex. Comm.), 296 S. W. 482; *Portland Cattle Loan Co. v. Hansen Livestock & Feeding Co.*, 43 Idaho 343, 251 Pac. 1051; Fletcher's Cyclopedia of Corporations, vol. 9, p. 9987, ¶ 5929. The case of *Guest Piano Co. v. Ricker*, 274 Ill. 448, 449, cited by appellant, does not

sustain appellant's contention. A very different state of facts appears in that case, and the court distinctly points out the following facts: "When this act went into effect, appellant was conducting a general business of selling and leasing pianos within the State of Illinois, the sales, leases and contracts being made and executed wholly within the State of Illinois; the appellant maintained a salesroom in the city of Quincy, Illinois, and there . . . was conducting and carrying on a general . . . sale and leasing business without having complied with the laws of Illinois."

The mere bringing of a suit by a foreign corporation does not constitute in and of itself the doing of business in this State within the meaning of the statute. *Pressed Radiator Co. v. Hughes,* 155 Ill. App. 80. Moreover, it may also be emphasized, that the transaction in question, by means of which the appellee acquired property rights in the notes and chattel mortgage in question, and in conformity with which the notes and mortgage were transmitted from this State to the appellee in the State of Indiana after it had acquired the ownership thereof, was a matter of interstate commerce, and was therefore permissible under the provisions of the Constitution of the United States. *International Text-Book Co. v. Pigg,* 217 U. S. 91; *Lehigh Portland Cement Co. v. McLean,* 245 Ill. 326; *American Art Works v. Chicago Picture Frame Works,* 264 Ill. 610; *Higgin Mfg. Co. v. Foreman Bros. Banking Co., supra.*

For the reasons stated, we conclude that the court properly sustained the demurrer to the plea in abatement. Judgment affirmed.

*Judgment affirmed.*