[Civ. No. 9195. First Appellate District, Division One.—November 30, 1934.]

E. F. KRAEMER, Respondent, v. JOSEPH COWARD et al., Appellants.

Clark, Nichols & Eltse for Appellants.

John Ralph Wilson and Carl E. Day for Respondent.

JOHNSTON, J., *pro tem.*—An action was brought in the Superior Court of the State of California in and for the County of Alameda wherein E. F. Kraemer was plaintiff and Joseph Coward, Elizabeth Coward, his wife, and Mrs. L. M. Moore were defendants, the purpose of said action being to recover possession of certain premises in Oakland under the provisions of section 1161a of the Code of Civil Procedure. Judgment was had by the plaintiff, from which judgment defendants have appealed.

The facts, briefly stated, are as follows: Defendants Joseph Coward and his wife, Elizabeth Coward, were desirous of negotiating a loan upon certain properties belonging to them in Alameda County, California, and applied to the Guaranty Mortgage Company of California, a California corporation, for a loan, which said company was at all times the agent of Coward and his wife in securing said loan. The Guaranty Mortgage Company secured the loan through one Howard C. Wade, who maintained an office at Los Angeles, California. Thereafter Coward and his wife executed a promissory note designated herein as the "principal note" for $29,000, bearing interest at six per cent per annum and a noninterest bearing note for $3,564.39 called the "subordinate note". Both notes called for monthly payments. At the same time a deed of trust was executed, signed by the Cowards, running

to one Howard C. Wade, as trustee. The notes were payable to said Howard C. Wade, as trustee, no beneficiary being named therein. The notes and deed of trust, together with a draft for $29,000, were sent to Detroit, Michigan, and were there approved and accepted by the United States Mortgage Bond Company, a Michigan corporation, and upon such acceptance the said United States Mortgage Bond Company honored the draft for $29,000 and sent the same to California, payable to the order of Coward and his wife. Both notes called for monthly payments. It is plainly apparent that the subordinate note was in reality for interest in addition to the interest payable on the principal note. Defendants Coward defaulted in the interest payments on the principal note and in the principal payments on the subordinate note. Thereafter the holder of the notes and deed of trust filed notice of breach, claiming that defendants defaulted by reason of their failure to pay interest. Defendant Moore is a tenant of the defendants Coward. Further facts will appear in the opinion hereafter.

The defendants have set up various defenses:

1. That the owner of the notes is a foreign corporation, not qualified to do business in this state, and that the whole or a portion of the transactions connected with this matter having been transacted in this state, are therefore unenforceable.

2. That the rate of interest of said loan was usurious.

3. That the sale was illegal because conducted by the attorney for the holder of the notes.

4. That the plaintiff was not the owner of the property and hence had no right to bring this action in unlawful detainer.

I. While the record is not as clear as it might be, it is fairly apparent that the lender of the money and the real holder of the notes was the United States Mortgage Bond Company, a Michigan corporation. It is conceded that this Mortgage Bond Company was not qualified to do business in California. As before stated, it would appear that the loan was made in the following manner: The Cowards, appellants, applied to the Guaranty Mortgage Company of California, a California corporation, for a

loan. Either this corporation could not or did not desire to make the loan and apparently entered into negotiations with other people to obtain the loan. In doing so, it must be and is conceded that this company was at all times acting as the agent of the Cowards. The notes and deed of trust were signed and acknowledged in California on property situated in Oakland, California, and sent to Detroit, Michigan, with draft attached. At Detroit, Michigan, the notes and deed of trust were accepted by the United States Mortgage Bond Company, the draft was honored and the money forwarded to California Pacific Title & Trust Company, at California, an agent of appellants Coward, where it was paid to the Cowards.

There are numerous cases holding that where a deposit is made by one party in the mail, of an instrument properly addressed to the other party, that the delivery is made at the residence of the person where it is intended to be received. However, if the acceptance is at the place of ultimate delivery, the person accepting, if not a party to the original contract, would not be construed as being a principal and having power over the agency of delivery. In the instant case the United States Mortgage Bond Company was not a party to the loan, but made the loan upon receipt at Detroit of the notes and deed of trust which had been formerly executed to Howard C. Wade, as trustee. There is no evidence to the effect that they had anything to do with the execution of said notes and trust deed, but that upon their delivery in Detroit, they accepted the notes and honored the draft. So far as the record shows, it appears to the court they were absolute strangers to the transaction up to the time that the notes and deed of trust were presented to them in Detroit. It would therefore appear to the court that the United States Mortgage Bond Company did not enter into the transaction at any other time and place, save and except that they accepted said notes and deed of trust at Detroit, Michigan, with the then misunderstanding that the holder of said notes and trust deed would accept payment at either a place in Los Angeles or a place in Detroit, subject, however, to the right of the holder of the notes to designate a different place of payment. At all times the payers, Cowards, appellants, had a right to pay at Los Angeles, until a different place of payment was designated.

It does not appear from the evidence that any different place of payment was ever designated. We. consider the question of place of payment solely for the purpose of determining the question of whether the loan was usurious.

It is the opinion of the court that the contract was executed in Michigan. We would call attention to the fact that the Supreme Court of this state in *Navajo County Bank* v. *Dolson,* 163 Cal. 485, 490 [126 Pac. 153, 41 L. R. A. (N. S.) 787], has held that unless the agent of a party deposits a document in the mails addressed to the other party, the addressee does not receive the document for acceptance and negotiation at the place deposited, unless the depositor is the agent of the addressee. In the instant case the depositor was appellants', Cowards', agent and prepared and addressed and sent said documents at the request of appellants, Cowards. At no time has there been shown to be any evidence showing that the depositor in California was the agent of any persons in Detroit, Michigan.

From the foregoing we cannot find that United States Mortgage Bond Company was doing business in California as such term is defined in our statutes.

II. The next point raised by appellants is that the loan was usurious because of a claim that the interest thereon was in excess of seven per cent per annum. In deciding this question we must consider as to where the interest was to be paid. The legality of rate of interest is governed either by the law in existence at the time and place of the execution of the contract, or of its performance. The laws of Michigan, the place of contract, provide one rate of interest, the laws of California provide a different rate. The laws of California permit the collection of interest where agreed upon between the parties where such rate does not exceed twelve per cent per annum.

Under the contract made with Howard C. Wade the place of payment is fixed at Los Angeles, California, or Detroit, Michigan, or at such other depository as the holder of the notes may select. It does not appear that any selection other than Los Angeles, California, or Detroit, Michigan, was ever designated by the depository. The borrowers, Cowards, made payments at Los Angeles, California, and these payments were receipted for by the trustee or his agent. No other designation of place of payment having

been made, we would be compelled to hold that the place of payment, and therefore performance, was, in so far as the borrower is concerned, at Los Angeles, California, and that the legal rate is twelve per cent per annum.

■ Appellants, however, contend that even though the California law governs, nevertheless the loan is usurious because the payments of interest for the first two years exceeded twelve per cent per annum, and furthermore that since proceedings to sell under the deed of trust were commenced within that period, that this fact constituted the loan usurious.

These matters are treated rather fully in *Sharp* v. *Mortgage Security Corp.*, 215 Cal. 287 [9 Pac. (2d) 819], and the Supreme Court in that case, referring to a former decision of theirs, *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [254 Pac. 956, 255 Pac. 805, 53 A. L. R. 725], has said: ''We intended to hold that the maximum rate allowed for loans coming under the act is at the rate of twelve per cent per annum *for the full period of the loan,* and that within such limit the parties may freely contract in respect thereto, if done in writing'' (italics ours), and then stated that while their decision was subject to the observation that it was *dictum,* yet they based it upon the weight of authority and what was deemed to be only just, and again, in the same decision, the court has stated: ''It is also elementary that the contract must in its inception require a payment of usury or it will not be held a violation of the statute and it may not be judged after some default of the borrower, which default alone authorizes penalties for forfeitures which, if exacted in the beginning, would have been a violation of the statute.'' Various decisions are then cited and the court further states: ''The cases above cited are also authority for the proposition that a debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of law is present at the inception of the contract.'' For the full period of the loan the interest does not amount to twelve per cent per annum and the loan is therefore not usurious.

In the same decision the court calls attention to the fact that appellants had not placed themselves in a position where they might rely upon the fact that the lender had

attempted to accelerate the maturity date of the obligations in order to collect the principal sum and interest accrued up to the time of the default and interest for the entire period of forbearance because of the fact that they had not pleaded that prior to the institution of the action they had tendered to plaintiff the correct amount due upon the obligation and that such tender when made was refused and that this was an elementary requirement before relief of the character sought could be had.

III. Appellants contend that the sale was illegal because conducted by the attorney for the holder of the notes. This contention has been sufficiently disposed of in the recent case of *Orloff* v. *Pece,* 134 Cal. App. 434 [25 Pac. (2d) 484], in which this court has held: "To decide this point we need only hold, which we do, that without regard to the section cited (2924a, Civ. Code), a trustee may employ an agent to do the ministerial act of auctioning the property," and in the same case decided that whereas there was nothing to indicate that the attorney did more than this, and whereas the trustee named in the deed of trust has not claimed to have done less than its provisions required, nor is it asserted that he performed any acts other than were provided for in the deed of trust, he had power to sell through another person.

There is no proof to the effect that the auctioneer in this case, Butler, who conducted the sale, was not legally authorized by trustee Howard C. Wade to sell the property, and did sell it under the terms and provisions as set forth in the deed of trust. The ratification of the trustee subsequently, by executing the deed, sufficiently confirms the sale. Therefore we must decide adversely to appellants upon that question.

IV. With reference to the question, "Is Kraemer the owner of the property?" appellants claim that plaintiff was not the owner of the property. The sale seems to have been fairly made. No fraud appears to have been perpetrated upon the appellants. The sale seemed to have been made under the laws of this state as provided herein. The borrowers, Joseph Coward and Elizabeth Coward, signed and executed the notes and deed of trust. They received the money and defaulted in their payments. They could not expect to retain the profits from the loan transaction and

likewise retain the property. They have never offered to return the moneys they have received and in the judgment of the court cannot be heard to complain.

As before stated there are numerous decisions to the effect that ''He who seeks equity, must do equity.'' The record title to the property was in the plaintiff Kraemer and even though he might have been holding title as a trustee for some other person, nevertheless, as record title owner, he was sufficiently the owner, entitled to the possession to maintain the action.

No other questions raised by appellants are sufficiently important to require consideration.

For the foregoing reasons, the judgment must be affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 28, 1935.