GENERAL MOTORS ACCEPTANCE CORP., Appellant, v.
HURON FINANCE CORP., Respondent.

(262 N. W. 195.)

(File No. 7716. Opinion filed August 5, 1935.)

*Stinchfield, Mackall, Crounse, McNally & Moore,* of Minneapolis, Minn., and *Churchill & Benson,* of Huron, for Appellant.

*Longstaff & Gardner,* of Huron, for Respondent.

WARREN, P. J.   The plaintiff, General Motors Acceptance Corporation, a foreign corporation, brought a claim and delivery action against one Turgeon and the Huron Finance Corporation for the recovery of a used 1930 model Chevrolet coach which had been sold by Ben Mogck, an automobile dealer at Alpena, S. D., to Turgeon.   The sale was made April 15, 1931, the sales price being $543.   Turgeon paid cash in the sum of $145, and the balance was evidenced by a conditional sale contract executed by the Mogck Chevrolet Company, by Ben Mogck, as seller, and Turgeon as buyer.   The conditional sale contract was filed on April 17, 1931, in the office of the register of deeds of Sanborn county, S. D., where the purchaser lived and where the car was used.   A duplicate copy of this contract was mailed to the General Motors Acceptance Corporation at Minneapolis, Minn., with an assignment attached executed by the seller to the General Motors Acceptance Corporation offering the conditional sale contract to it for sale. Later the plaintiff bought the contract and sent Mogck the money. This conditional sale contract provided that the title to the car so sold should remain in the seller until the payments had been fully made and that in case of default, either in payments or in other respects, such as violation of any other provision of the contract, then the unpaid balance became due at the option of the holder of the contract, and further it contained provisions for repossessing the car and disposing of it as provided by the contract and by statute.   Turgeon paid the monthly installments up to and including the September payment.   He then defaulted on the other payments.   Thereafter plaintiff brought suit.   Defendant Turgeon did not answer.   The Huron Finance Corporation answered by plea in bar alleging that the plaintiff was a foreign corporation and had not complied with the foreign corporation laws of this state and at no time had it filed with the secretary of this state any copies, certified or otherwise, of its charter, articles of incorporation, or articles of association, or any amendments, and further by the way of counterclaim alleged that on the 14th day of April, 1931, the Mogck Chevrolet Company by Ben Mogck, made a con-

ditional sale contract covering the automobile in question and another automobile to the Huron Finance Corporation for a consideration of $500 advanced to the Mogck Chevrolet Company; that the said conditional sale contract was thereafter filed in the office of the register of deeds of Jerauld county, S. D., on the 20th day of April, 1931; and that by virtue thereof the Huron Finance Corporation claims to be entitled to the immediate possession of said Chevrolet coach. At the conclusion of the trial the court entered findings of fact, conclusions of law, and a judgment in favor of the defendant, the Huron Finance Corporation. Plaintiff moved for a new trial. The motion for new trial having been denied, plaintiff perfected an appeal to this court from the judgment and from the order overruling the motion for new trial.

The principal question before us appears to be: Did the appellant transact business within the state of South Dakota and is it subject to our foreign corporation qualifications law, it being admitted that it has not complied therewith, and may it maintain its contract through this action of claim and delivery in the courts of this state? The statutes of this state require that foreign corporations, with the exception of certain enumerated classes which are not here material, before engaging in business in this state shall file copies of their articles of incorporation with the secretary of state and a foreign corporation failing to comply with such statutory requirements is subject to certain penalties. Sections 8902 to 8909, both inclusive, of the 1919 S. D. Revised Code (as amended), are quite specific as to the requirements. Section 8909 provides as follows: "Every contract made by or on behalf of any foreign corporation, subject to the provisions of this chapter, affecting the personal liability thereof or relating to property within this state, before it shall have complied with the provisions of this chapter shall be wholly void, on its behalf and on behalf of its assigns, but shall be enforcible against it or them."

It being admitted that appellant has not complied with the statutory requirements we inquire if this was, as contended for by appellant, a transaction of interstate commerce.. This court in recent decisions dealt at length upon contracts concerning interstate commerce, and much of what was said in the decisions in Dakota Photo Engraving Co. v. Woodland, 59 S. D. 523, 241 N. W. 510, Charles Friend &Son v. Schmidt, 57 S. D. 477, 233 N. W. 913,

and Lawyers' Co-op. Pub. Co. v. Bauer, 60 S. D. 259, 244 N. W. 327, is applicable to the facts in the case at bar. Considerable stress has been placed by the respondent in an attempt to show that the appellant has, by and through agents, conducted and transacted business within the state of South Dakota. In this connection our attention is called to the evidence as to the activities of appellant. The record discloses that solicitors were in the state undoubtedly for the purpose of securing business. The appellant's activities through such representatives are somewhat similar to the activities delineated in the case of Dowe v. Debus Mfg. Co., 49 Ga. App. 412, 175 S. E. 676. In defining the status of the solicitors for the corporation in that case, the court said: "The character of the activities engaged in by the foreign corporation, which are essential to give the courts of this state such jurisdiction over it, do not consist in the mere solicitation of business within this state by persons seeking and taking orders on commissions and transmitting them to the home office for acceptance and shipment, even though the foreign corporation may lend its assistance to the local salesmen by advertising its product within the state, and may aid, train, and assist them, in increasing their efficiency in the discharge of their own activities as local salesmen, with the result that such increased efficiency may indirectly have the effect of increasing or expanding the business of the foreign corporation. But, in order for the foreign corporation to be doing business within this state in the sense which would subject it to personal judgment by the courts of this state, it must either maintain an office or place of business within the state, or else there must be a local performance on its part of its own contractual obligations to customers, otherwise than by the mere interstate shipment of goods sold by local solicitors. Southeastern Distributing Co. v. Nordyke & Marmon Co., 159 Ga. 150, 157-161, 125 S. E. 171; Smith v. Nolting First Mortgage Corp., 45 Ga. App. 253 (1), 254, 164 S. E. 219; People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537."

Clearly it cannot be said that the appellant in the case at bar was engaged in selling personal property on the installment plan, but it was engaged in the purchasing of commercial paper, and from time to time certain individuals representing the appellant solicited certain classes of automobile dealers for the purpose of

buying commercial paper. It is also conceded that certain blank forms were left with local dealers upon which to make applications, and it would seem from the record that there applications were filled out and mailed to the appellant at its office at Minneapolis, Minn., where appellant exercised its judgment as to the purchase thereof. Considerable has been said in the briefs of both parties as to the different plans for financing dealers, one known as the "floor plan," wherein dealers purchased automobiles and other equipment from manufacturers and were financed by the appellant, and the other plan whereby appellant purchased paper by and through assignments from the automobile dealers. To pursue the facts before us and to delineate the different steps and terms of these plans would require the expanding of this opinion to great length. Certain appellate courts in other jurisdictions where such questions have been presented for determination, and where foreign finance corporations transacted business in the same manner as did the General Motors Acceptance Corporation in South Dakota, have attempted to explain these plans, and as they have covered substantially all the facts in the case at bar, it is pertinent to quote from some of them. In Jones v. General Motors Acceptance Corp., 205 Ky. 227, 265 S. W. 620, the Court of Appeals of Kentucky, in discussing the question of doing business in the state so to require compliance with the Kentucky Statutes, said:

"It appears that appellee is incorporated under the laws of the state of New York, and has no officer, agent, or place of business in Kentucky. It was organized for the sole purpose of financing automobile dealers primarily, if not exclusively, those handling the output of the General Motors Company, and all transactions with Kentucky dealers are handled through a branch office located in Detroit, Mich. It finances an automobile dealer by discounting notes received by him in the sale of automobiles, and also by discounting notes executed by him to the manufacturer in the purchase of automobiles, and in both instances the notes are secured by liens retained on the automobile involved. Appellee furnishes the dealer with a supply of forms for notes and liens or conditional sale contracts on which are printed assignments to appellee. When the dealer sells an automobile on the partial payment plan, the purchaser executes one of these form notes and contracts. The

dealer then executes the assignment to appellee, and mails it to appellee at its office in Detroit. The form also contains a financial statement of the purchaser and, upon receipt of the papers in Detroit, they are submitted to appellee's credit department, and, if approved, the note is discounted, and appellee mails its check to the dealer. It does not solicit any business in Kentucky, but occasionally sends an agent here whose sole purpose is to explain the forms and 'straighten out' any dealer whose affairs have become involved. It has no contract with the dealer, and is not obligated to discount any of his paper, nor is the dealer obligated to transact any of his business with the appellee. He forwards only such notes as he may desire to have discounted by the appellee, and the latter discounts only such of those notes as it may desire to handle.

"Each transaction is separate and distinct, is not made pursuant to any contract, and is not consummated until the appellee has satisfied itself as to the credit rating of the maker of the note and of the dealer, and has agreed to and does discount the note. The dealer does not represent the appellee, nor has either any interest in or control of the business of the other.

"Appellee, as stated before, also finances dealers in the purchase of automobiles from the manufacturer. The process is somewhat similar to that above outlined. Forms of notes and conditional sale contracts or other liens are furnished the manufacturer, and when the dealer purchases a shipment of automobiles on credit, these forms are filled out by the manufacturer, attached to the bill of lading for the shipment, and mailed to the local bank of the dealer. When the dealer signs the note and lien he receives the bill of lading for the shipment, and the bank returns the executed forms to the manufacturer, who forwards them to appellee. The appellee, if it desires to do so, then discounts the note of the dealer, but it is under no contract to do so, and even when it does discount the note it is done for and at the request of the manufacturer.

"It seems clear to us that under neither of the foregoing state of facts can appellee be said to be doing business in this state within the meaning of section 571 of the Statutes. It neither made nor has any contracts here, nor has it an agent soliciting or securing business in Kentucky, and it neither discounts nor accepts any notes or assignments in this state. It does not exercise any of the purposes for which it was organized within this jurisdiction.

It was therefore not doing business in Kentucky, within the meaning of section 571 of the Statutes as interpreted by this court and others in numerous decisions. Commonwealth Farm-Loan Co. v. Candle's Adm'r, 203 Ky. 761, 263 S. W. 24; Hughes v. R. O. Campbell Coal Co., 201 Ky. 839, 258 S. W. 671; Pratt v. York, 197 Ky. [846], 851, 248 S. W. 492; United Iron Works Co. v. Watterson Hotel Co., 182 Ky. 113, 206 S. W. 166; Ichenhauser Co. v. Landrum's Assignee, 153 Ky. [316], 320, 155 S. W. 738; Bamberger v. Schoolfield, 160 U. S. [149], 167, 16 S. Ct. 225, 40 L. Ed. 374.

"Under exactly the same state of facts it has been adjudged by the courts in at least two states, where the same law prevails as that here involved, that the appellee who was a party litigant in each instance was not doing business within the meaning of that law. Davis & Worrell et al v. General Motors Acceptance Corporation, 153 Ark. 626, 241 S. W. 44; General Motors Acceptance Corporation v. Lund, 60 Utah, 247, 208 P. 502. We are therefore satisfied that the court properly adjudged that the appellee was not doing business within this state within the meaning of section 571 of the Statutes."

See, also General Motors Acceptance Corporation v. Lund, 60 Utah, 247, 208 P. 502.

In Davis & Worrell et al v. General Motors Acceptance Corporation, 153 Ark. 626, 241 S. W. 44, 47, the Supreme Court of Arkansas devoted considerable space to discussing the purchase of this class of paper from customers outside the state by using the forms of the purchaser and the facts show that a large number of purchases were made from different dealers in motor vehicles. The question as to whether or not agency was established by the method of obtaining these loans was also considered and we quote from said decision as follows:

"The applications for sale of commercial paper were received by the plaintiff at its office outside of this state. They were passed upon there and accepted or rejected there. The plaintiff had no agency in this state, and the mere fact that it acted upon applications coming through residents in this state would not constitute doing business in this state within the meaning of the statute.

"As we have said, it does not appear that the plaintiff ever had an agency in this state, and the most that can be said is that

it actually accepted discounts from 40 different dealers in motor vehicles. The negotiations, however, were conducted by the dealers themselves, who, although residents of this state, were not in any sense the agents of the plaintiff, and the plaintiff was not in any way connected with their business or obligated to purchase, at a discount or otherwise, the notes which such dealers should take for motor vehicles sold by them. It is true that the furnishing of blank contracts to be used by the dealers in selling their motor vehicles and in purchasing the notes given for said motor vehicles tended to further the business of such dealers, but this did not make such transactions fall within the terms of the act. This would not be the controlling test. The test is, Was the transaction of the business such that the corporation was for the time being, through its agents or otherwise, within the state for the purpose of doing business?

"In reaching this conclusion we do not mean to say that a foreign corporation must have an agency established in this state to bring it within the operation of our statute regulating foreign corporations doing business in this state; but we do hold that in a case like this, where the foreign corporation had its place of domicile in another state and discounted commercial paper of parties with money paid out in such other state on applications made to it there through dealers in this state, such transactions do not constitute doing business in this state by such foreign corporation."

The Supreme Court of West Virginia in the case of General Motors Acceptance Corporation v. Shadyside Coal Co., 102 W. Va. 402, 135 S. E. 272, 274, reached a similar conclusion upon practically a similar state of facts as that in the case at bar. It held as follows:

"The written applications of the dealers and distributors for wholesale credit and all other papers used in consummating the loans by the plaintiff to the purchasers of automobiles in West Virginia are received and approved by the corporation at its branch offices outside of the state; the only acts occurring within the state being the local bank transactions hereinbefore detailed, which are confined to the acceptance of security and repayment of the loans. The collection in this state by a foreign corporation of debts due it for goods sold or otherwise contracted does not constitute doing.

transacting, carrying on, or engaging in business within the meaning of the statute under consideration; nor does the acceptance in the state of evidence of such debts, or the taking of security therefor, come within the meaning of the statute. 14A C. J. p. 1278.

"The courts considering the question as to whether or not the plaintiff's methods of transacting business in states other than those in which it maintains offices constitutes 'doing business,' within the meaning of statutes similar to ours (section 30, chapter 54, Code), have ruled in the negative. Jones v. General Motors Acceptance Corporation, 205 Ky. 227, 265 S. W. 620; General Motors Acceptance Corporation v. Lund, 60 Utah 247, 208 P. 502; Davis & Worrell v. General Motors Acceptance Corporation, 153 Ark. 626, 241 S. W. 44, 47. We are clearly of the opinion that the plaintiff is not doing business in this state, within the meaning of the statute."

It cannot be said from the record before us that the appellant's transactions with South Dakota residents amounted to concluding business transactions within the state. As we view the evidence, the acts for and in behalf of the appellant merely amounted to the soliciting of business. We are mindful of a number of authorities holding that foreign corporations have been held to be doing business within the state for the purpose of obtaining jurisdiction over the corporation by service of process on its agents within the state. That question is not before us, as the facts involved herein as to jurisdiction go merely to whether or not the appellant was doing business within the state in such a manner as to require it as a foreign corporation to qualify as a foreign corporation before it would be permitted to enforce its contracts in the courts of this state. There is considerable distinction between what constitutes doing business within the meaning of the statutes, and what constitutes doing business in the sense that the corporation subjects itself to the jurisdiction of the courts of the state. Atkinson v. U. S. Operating Co., 129 Minn. 232, 152 N. W. 410, L. R. A. 1916E, 241. This court has recognized the distinction but did not invoke its application in Dakota Photo Engraving Co. v. Woodland, 59 S. D. 523, 241 N. W. 510.

Respondent contends that the appellant was not engaged in interstate commerce because of the fact that notes and contracts

per se are incapable of becoming articles of interstate commerce. We are not impressed with that contention as being a sound rule of law. We will, however, admit that under a certain statement of facts, as shown by some of the decisions, such is the case, but in those instances the contracts were not dealt with by the parties as articles of interstate commerce. The facts in the instant case are essentially different and legally distinguishable. The law seems to be quite well settled and established that stocks and bonds are proper subject of interstate commerce and that the transaction of such articles of personal property from one state to another for the purpose of barter and sale and delivery constitutes not only commerce among the states of this country, but constitutes a very large and important element of such commerce. In Bracey v. Darst (D. C.) 218 F. 482, 495, the court said: "We do not think it can be longer questioned that stocks, bonds, debentures, and other securities are subject-matters of interstate commerce." And see supporting authorities therein cited.

In Industrial Acceptance Corporation v. Haering, 253 Ill. App. 97, the court held that the purchase of notes and contracts by a finance corporation under the same conditions as in the case at bar constituted interstate commerce transactions. It seems clear to us from the record in this case that the appellant was engaged in interstate commerce and that the foregoing corporation qualifications of the statutes of South Dakota have no application to this appellant.

Respondent urges that the court found the fact of agency and that where the findings of the court were drawn from inferences from undisputed facts they must stand unless there is no reasonable basis in the evidence for them. As we view the matter it seems more to be a matter of law to say what the conduct of the appellant amounted to. A decision of the facts as to what constituted doing business must necessarily depend upon the law whether or not those acts were a part of interstate commerce transactions. We have earlier in this opinion come to the conclusion that they are interstate commerce transactions, and therefore we must necessarily hold that a decision of those facts was a matter of law, and we are therefore of the opinion that the learned trial judge erred in holding that the appellant was engaged in

doing business in this state. In other words, we hold that the evidence does not preponderate in favor of the respondent and is insufficient to support the findings, conclusions, and judgment of the trial court.

The order and judgment appealed from are reversed.

POLLEY, CAMPBELL, and ROBERTS, JJ., concur.

RUDOLPH, J., concurs in result.