[Crim. No. 439. Fourth Appellate District.—October 25, 1938.]

THE PEOPLE, Respondent, v. PAUL P. LARUE, Appellant.

Buel R. Wood for Appellant.

U. S. Webb, Attorney-General, Paul D. McCormick, Deputy Attorney-General, and Elmer W. Heald, District Attorney, for Respondent.

MARKS, J.—By an indictment of the grand jury of Imperial County, containing fifteen counts, defendant was charged with fifteen violations of section 476a of the Penal Code. He was found guilty on fourteen counts and has appealed from the judgments pronounced upon him and from the order denying his motion for new trial. Count ten was dismissed.

Defendant maintains that no count of the indictment states facts sufficient to constitute a public offense. With the exception of the date, the amount, and the name of the payee of each check, the charging part of each count is similar. With two exceptions, to be hereinafter noted, the charging portions of the indictment follow the language of the first paragraph of section 476a of the Penal Code. This has been held a sufficient pleading. (*Ex parte Shackleford*, 64 Cal. App. 78 [220 Pac. 430]; *People* v. *Carmona*, 80 Cal.

App. 159 [251 Pac. 315]; *People* v. *Anderson,* 58 Cal. App. 267 [208 Pac. 324].)

The two particulars in which it is maintained that the indictment departs from the usual pleading, are: (1) After alleging the intent to cheat and defraud the payee, there was added, "and the First National Bank of Bellflower, California, a corporation", upon which the check was drawn; (2) after the allegation that defendant "did . . . make, draw, utter and deliver" the check, there was added the further allegation that he "caused to be made and, to be delivered" the check to the payee. As each count of the indictment contained sufficient allegations under the statute, and as the portions of which defendant complains could not cause prejudice, they may be regarded as surplusage and disregarded under the rule announced in *People* v. *Handley,* 100 Cal. 370 [34 Pac. 853].

Defendant next urges that the cases should have been tried in Los Angeles County, because, as he maintains, the offenses were committed there and not in Imperial County. The general facts concerning thirteen of the checks are similar. We will consider these counts together. The facts proved under count eight differ from the others and must be considered separately.

Defendant was a hay dealer with his business address at 5703 Riverside Drive in Los Angeles, California. In December, 1937, and January, 1938, the months involved here, he carried his bank accounts in the First National Bank of Bellflower. He employed Ben J. Broecker to buy hay for him in Imperial County. He also employed several truck drivers to transport the hay from Imperial County to his yard and to other points of delivery in Los Angeles County. Each day defendant would sign a number of blank checks and leave them in his office with C. D. Bowler, his bookkeeper. Before a truck driver started on his trip to Imperial County to pick up his load of hay, he would call at the office and Bowler would give him one of these blank checks with which to pay for the hay. Occasionally Bowler would date a check but he did not fill in the name of the payee nor the amount of the check. After the hay had been loaded and weighed in Imperial County, the amount of the check and the name of the payee were filled in by either the truck

driver or by Broecker. The check was then delivered to the seller of the hay, or to a scales company which delivered it to the seller. Defendant admitted knowing all the details of these transactions. He testified that it was his plan of doing business and had been in operation for several years.

Under the foregoing facts there can be no question of the venue of the thirteen offenses lying in Imperial County. The truck drivers and Broecker were agents of defendant with authority to fill in the blanks on the checks and to deliver them. The possession of the checks remained in defendant, through his agents, until they were completed and delivered in Imperial County. While the checks were signed, and some of them dated, in Los Angeles County, they were not completely made or drawn there, but in Imperial County, where they were uttered and delivered. We need not decide the question of the right to prosecute these offenses in Los Angeles County under the provisions of section 781 of the Penal Code. That question is not involved here.

■ A different situation is presented by count eight of the indictment. That count charged violation of section 476a of the Penal Code by the delivery of an insufficient fund check dated December 31, 1937, for fifty dollars to L. P. Ware, the payee.

The evidence discloses that Ware, a resident of Brawley in Imperial County, sold a truck to defendant on a conditional sales contract upon which payments of fifty dollars a week were to be made; that the check in question was in payment of one of these weekly instalments; that it was signed by defendant and fully made out by Bowler in Los Angeles; that in the usual course of business it was mailed to Ware in Brawley; that it was received by Ware through the United States mail; that when presented at the First National Bank of Bellflower payment was refused because of insufficient funds; that the check has not been paid.

It is clear that under these facts the check was both made and drawn in Los Angeles. The question remaining is: Was it uttered or delivered in Imperial County? If not, the venue of this offense lay in Los Angeles County and not in Imperial County.

The word "utter" was thus defined by the Supreme Court in *People* v. *Tomlinson,* 35 Cal. 503:

"The words 'utter' and 'publish', in the law of forgery, are synonymous, for the meaning of both is 'to declare or assert, directly or indirectly, by words or actions', that the forged instrument is genuine. Thus, to offer a forged bank note in payment, is both to utter it and to publish it. To complete the offense of uttering and publishing, it is not necessary that the note should be passed." (See, also, *People* v. *Nishiyama*, 135 Cal. 299 [67 Pac. 776].)

When the check was fully made out, addressed to Ware, and deposited in the mail in Los Angeles in the usual course of business, there was an implication or assertion that it was genuine and would be paid on presentation. Therefore, we conclude that the check was uttered in Los Angeles.

The meaning of the word "deliver" does not need special definition here. In speaking of what constitutes delivery of a negotiable instrument, in *Loud* v. *Collins*, 12 Cal. App. 786 [108 Pac. 880], it was said:

"The place where the contract was written, signed or dated does not necessarily fix or determine the place where it was executed. Delivery of an instrument is the final act essential to its consummation as an obligation. . . .

"The general rule is that depositing a note in the postoffice addressed to the payee with his assent is a sufficient delivery thereof. (Daniel on Negotiable Instruments, sec. 67; *Barrett* v. *Dodge*, 16 R. I. 740 [27 Am. St. Rep. 777, 19 Atl. 530]; *Ivey* v. *Kern County L. Co.*, 115 Cal. 196 [46 Pac. 926]; *Bank of Yolo* v. *Sperry Flour Co.*, 141 Cal. 314 [74 Pac. 855, 65 L. R. A. 90].)"

In *Gas Appliance Sales Co.* v. *W. B. Bastian Mfg. Co.*, 87 Cal. App. 301 [262 Pac. 452], the court said:

"Under such circumstances the delivery would be determined by the time and place where and when the document was mailed to the party entitled thereto, with the proper address affixed and the postage prepaid." (See, also, *C. H. Parker Co.* v. *Exeter Refining Co.*, 26 Cal. App. (2d) 610 [79 Pac. (2d) 1114].)

Applying the foregoing rules to the facts of this case we conclude that delivery of the check was complete when it was deposited in the mail in Los Angeles. There is nothing in the cases of *Navajo County Bank* v. *Dolson*, 163 Cal. 485 [126 Pac. 153, 41 L. R. A. (N. S.) 787], and *Kraemer* v. *Coward*, 2 Cal. App. (2d) 506 [38 Pac. (2d) 458], conflict-

ing with this conclusion. In the instant case there is nothing in the record indicating an intention that the carrier of the letter containing the check should act as the agent of defendant.

As the check was made, drawn, uttered and delivered in Los Angeles, it follows that the venue of the offense charged in the eighth count of the indictment lay in Los Angeles County and not in Imperial County and that the judgment pronounced under that count must be reversed.

■ The testimony of defendant before the grand jury was admitted in evidence against him over his objection. We have searched the record and can find nothing to show that defendant was in custody at the time of this testimony or that he did not appear as a witness before the grand jury at his own request. His counsel's assertions to the contrary are not supported by any reference to the record and we have found nothing there supporting those assertions. Under these circumstances what was said in *People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042], is appropriate here.

"Of the cases cited to support the admission of this testimony, the only one which need be noticed is *People* v. *Sexton,* 132 Cal. 37 [64 Pac. 107], in which this court used the following language: 'Defendant's statements, whether made in the grand jury room, at the trial, or extrajudicially, may be used against him, and we see no error in their admission here.' The report of the decision does not disclose the conditions under which the defendant in the Sexton case testified before the grand jury. It may well be assumed that no accusation had been made against Sexton, or that he gave his testimony voluntarily, with full knowledge of his right to remain silent. In either of these events his declarations were properly admitted in evidence at the trial."

■ Further, the record shows that when he appeared before the grand jury, defendant was informed that he did not have to make any statement unless he wanted to; that whatever he said must be free and voluntary; that whatever he said could be used against him in any proceeding which the grand jury might see fit to take against him. While the warning contained another statement which was not legally correct we believe that it sufficiently informed him of his right to refuse to testify to permit the admission of the

evidence even though he was there, charged with the offenses, was taken before the grand jury by an officer of the law and was in custody.

In his testimony before the grand jury defendant admitted every element of the thirteen crimes charged against him. The facts of the charge of delivering the check to Ware were not sufficiently developed there to show the proper venue of that count of the indictment.

Defendant complains of three instructions given by the trial court. The instructions bear no numbers so we will identify them by description as it is unnecessary to quote them.

■ The first instruction opens with section 781 of the Penal Code. Following that quotation is a proper summary of the elements of the several offenses taken from the evidence. There was no error in giving this instruction.

■ The second instruction contained a quotation of section 3095 of the Civil Code, which relates to filling in blanks on negotiable instruments. This instruction should not have been given as it was not responsive to nor did it bear upon any issue made by the evidence. It is undisputed that when the checks were delivered all blanks were filled. We cannot conceive of any prejudice resulting from this instruction.

■ The third instruction complained of was on the question of fraudulent intent. Taken by itself it does not state all of the necessary elements of fraudulent intent. Other instructions on that subject were given so that when all the instructions are read together no serious prejudice resulted from giving this faulty one.

■ Defendant complains of several rulings on objections to the admissibility of evidence and a remark made by the trial judge. The errors, if any, were trivial and unimportant and, in view of the overwhelming evidence of the guilt of the defendant, could not have influenced the verdicts of the jury.

Lastly, defendant urges that the evidence is insufficient to support the verdicts and judgments. What we have already said sufficiently disposes of this contention.

The judgment pronounced on defendant on the verdict of guilty under count eight of the indictment charging delivery of the check of fifty dollars to L. P. Ware is reversed.

The judgments pronounced on the verdicts of guilty under counts one to seven, inclusive, count nine, and counts eleven to fifteen, inclusive, of the indictment, are affirmed.

As the defendant cannot be again tried in Imperial County on count eight of the indictment the order denying the motion for new trial is affirmed.

Barnard, P. J., and Griffin, J., concurred.