[Civ. No. 6112. Third Appellate District.—June 8, 1939.]

McMILLAN PROCESS COMPANY (a Corporation), Respondent, v. C. H. BROWN et al., Appellants.

H. C. Nelson for Appellants.

Irwin T. Quinn for Respondent.

MONCUR, J., *pro tem.*—Plaintiff in the above-entitled action, the respondent herein, and C. H. Brown, one of the above-named defendants and appellants, entered into a conditional sales contract on the 24th day of August, 1924, by which the respondent gave and granted to said C. H. Brown the right to possess, use, and operate a certain patented machine intended for the purpose of defiberizing wood. The contract also provided for the delivery to said C. H. Brown of additional machines when and if required, and pursuant thereto

an additional machine was delivered to said C. H. Brown. Said contract provided that said C. H. Brown would not at any time sell, assign, transfer pledge, or otherwise incumber any of said machines and that title to said machines should at all times remain in respondent, subject to the right of said C. H. Brown to possess, use, and operate said machines as specified in the contract; that respondent or its nominees should at all times have access to the books, records, shipping documents, memoranda, and other data kept or used by second party in conducting his business for the purpose of checking and determining the amount of redwood bark, lumber, wood, sawmill waste and forest waste defiberized, manufactured, produced and sold by second party in which said machines or any of them were in anywise used. Also, if said C. H. Brown should make default in any of the terms, covenants and conditions to be kept and performed by him, he should forfeit all right to possess, use, or operate all of said machines specified therein to be manufactured and leased thereunder or thereafter, and that respondent might, at its option, be entitled to repossess said machines, and in such event all rights of C. H. Brown in and to said machines should terminate and cease.

As consideration for the delivery of said machines to said C. H. Brown he agreed to pay to respondent for the right to possess, use and operate said machines and each of them, a royalty of $1 per ton upon all redwood bark sold and shipped and 50 cents per ton upon all lumber, wood, sawmill waste and forest waste sold and shipped defiberized wholly or partially by said machines, and beginning with one year from the date of said contract to pay to respondent an additional sum of 50 cents per ton on all redwood bark, lumber, wood, sawmill waste and forest waste defiberized by said machines until said additional sum of 50 cents so paid should equal the sum of $5,500 for each of said machines. Also, a down payment of $2,000 on each machine delivered was specified. The royalties as provided in said contract were to be paid on the tenth day of every month covering all transactions of the previous calendar month.

Under this contract the machines were delivered and used by appellants Brown and some royalties were paid. Disputes arose concerning the payment of royalties and on January 23, 1931, an amendment to the contract was agreed upon whereby it was provided that all future royalties

should be 50 cents per ton upon all bark defiberized under said contract, and that payment of $800 should be made upon the execution of the amended agreement and a balance of $973.72 should be paid within sixty days thereafter. The amounts provided in said amendment were paid until June 10, 1931, when no further payments were made under the original or amended contracts. Appellants, however, continued to use the said machines.

In August or September of 1934 appellants informed respondent that they owned the machines and that respondent had no right to them or the royalties due under the contract and refused them the right to see the machines. Also, on or about that time, appellant Barry Brown, a son of appellant C. H. Brown, refused to allow U. S. McMillan, then president of respondent corporation, to see the books and records of said C. H. Brown or of the alleged partnership.

On September 19, 1934, respondent notified said C. H. Brown in writing that it elected to terminate the contract for his failure to comply with the terms, covenants and conditions in said contract to be performed by him and by reason of his default therein surrender of the machines was demanded, and he was notified that if he did not surrender possession of the machines to respondent forthwith action would be instituted therefor and that the said contract would be declared at an end.

The complaint in the action was filed on the 28th day of September, 1934, and asked for a recovery of the possession of the said machines and, in the event that recovery cannot be had, for the value thereof.

Respondent corporation was organized under the laws of the State of Nevada in 1922. Its principal place of business was located in San Francisco until 1927, when its principal place of business was moved to Chicago. Until 1927 said respondent corporation was authorized to do intrastate business in California but thereafter it was not so authorized. In the years from 1932 to 1936 the corporation's rights under the laws of Nevada were suspended because of its failure to comply with certain requirements of the Nevada statutes but on the 13th day of April, 1936, the suspension was removed and it was reinstated.

In their answer appellants set forth the following defenses: (1) That respondent was not entitled to maintain the action because of its failure to comply with the laws of the

State of Nevada and of the State of California; (2) that respondent's cause of action is barred by the statute of limitations; (3) that under the facts appearing in evidence respondent was not entitled to declare a forfeiture and to repossess the said defiberizing machines.

■ Regarding the question of the corporation's suspension in the State of Nevada, as the suspension had been removed prior to the trial of the action this defense need not be considered. ■ In connection with appellants' contention that respondent transacted intrastate business in California, the evidence shows two isolated transactions, one after the action was commenced and prior to any hearing on the merits, and one after a partial trial of the case. There is some conflict in the evidence as to whether these two transactions were carried on personally as an individual by said U. S. McMillan, who was then president of respondent corporation, or were for and on behalf of the corporation.

If it be assumed that the two transactions were on behalf of the corporation, still it cannot be held that such transactions constituted doing intrastate business in this state. As stated, respondent corporation did no intrastate business in California from 1927 until the dates of the two alleged intrastate transactions claimed to have occurred in 1936. Section 405 of the Civil Code of this state provides as follows:

"The term 'transact intrastate business' as used in this chapter means entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce."

In 6A California Jurisprudence, page 1594, is found the following:

"The general consensus of opinion is that a corporation must, to come within the provisions, transact within the state some substantial part of its ordinary business by its officers or agents selected for that purpose, and that the transaction of an isolated business act is not carrying on or doing business. If the corporation is engaged in a more or less continuous effort, not merely casual, sporadic or isolated, to conduct and carry on within the state some part of the business in which it is actually and generally engaged, it may be said to be doing business within the state."

284

Further citation of authorities upon this point is deemed unnecessary. It will suffice to say that it is generally held that a foreign corporation must transact a substantial part of its business within the state to justify a finding that the business transacted constitutes doing intrastate business. Even the authorities cited by appellants appear to be in agreement upon this point. The burden was upon appellants to establish their contention in this regard by a preponderance of the evidence. This they did not do. The trial court found against their contention. This finding is supported by the evidence and is in conformance with the settled rule of law in this state. We are satisfied that the trial court's finding is correct and that it should not be disturbed by this court.

Appellants earnestly contend that there was a cancellation of the original contract entered into in 1924 between respondent and appellant C. H. Brown, that notice of such cancellation was brought home to respondent and that therefore the action is barred because of not having been commenced within three years from notice of such cancellation. Much evidence concerning this question was presented to the trial court, consisting of oral testimony and correspondence. The court found against appellants' contention upon this defense. Viewing all of the evidence upon this question in connection with the conduct of the respective parties and particularly that of the appellants, nothing is shown sufficient to impart such notice to respondent as to indicate to respondent that appellants were no longer proceeding under the original contract and the amendment thereto until 1934. Notice of respondent's election to treat the contract as canceled and demanding the return of the two defiberizing machines was given to appellants promptly following appellants' claim of ownership of the said two machines and their refusal to otherwise comply with the terms of the contract and this action having been promptly commenced thereafter, the defense of the statute of limitations could not lie.

Appellants' claim to ownership of the machines is based upon an alleged transaction with one G. A. Aicher, who was president of the respondent corporation when respondent corporation and appellant C. H. Brown entered into the contract of August, 1924. It appears that the machines as delivered to appellant C. H. Brown did not operate

satisfactorily and that it was necessary for Mr. Aicher to go to the place where the machines were being operated for the purpose of endeavoring to make the machines operate properly. Changes were made in the machines, and after negotiations between C. H. Brown and Mr. Aicher, it was testified to by defendant C. H. Brown that he and Mr. Aicher agreed that the contract of August 14, 1924, should be definitely canceled and that a new contract was then made between them whereby the ownership of the machines was relinquished to said C. H. Brown. From the evidence in the case, it appeared that Mr. Aicher had passed away several years prior to the trial of the action. Therefore the court did not have the benefit of his testimony in respect to this matter. Considerable evidence, consisting of letters claimed to support this testimony of C. H. Brown, was introduced. To set forth this evidence at length would entail an unnecessary extending of this opinion. At this time it is sufficient to say, viewing the conduct of the parties in respect to this claim of appellants, that, as shown by the evidence, the trial court was amply justified in finding, as it did, that there was no cancellation of said contract by appellants and that it remained in full force and effect until the date of election of respondent to treat the original and amended contracts as being canceled. It is neither claimed nor shown by appellants that there was any authorization by the respondent corporation to Mr. Aicher to modify or cancel the original contract between respondent and C. H. Brown and no ratification by respondent corporation of the alleged action of Mr. Aicher is either claimed or shown; ▮ neither is it of any avail to appellants that respondent corporation did not declare a forfeiture when there was a cessation in payments of the royalties.

"The plaintiff was not bound to treat the contract as abandoned on the first breach of it, or on any particular breach, but had his election still to rely upon it. The statute could not begin to run until he made his election to rely no longer upon the contract. . . . " (*Richter* v. *Union Land & Stock Co.*, 129 Cal. 367, at p. 375 [62 Pac. 39, 41]; *Rose* v. *Foord*, 96 Cal. 152 [30 Pac. 1114]; *Taback* v. *Greenberg*, 108 Cal. App. 759, 760 [292 Pac. 279].)

▮ As to the sufficiency of any notice of forfeiture given to appellants, as they claimed complete ownership of the machines anyway and denied any rights in respondents, any

further or additional notice was unnecessary. Clearly, under the circumstances here disclosed, notice and demand would have been unavailing, and any further proof of such notice and demand is not necessary. (*Wood* v. *McDonald*, 66 Cal. 456 [6 Pac. 452]; *San Diego Const. Co.* v. *Mannix*, 175 Cal. 548, 558 [166 Pac. 325].)

As has been stated, the contract provided for an initial down payment of $2,000 upon the purchase price of $5,500 for each machine, the balance to be paid as royalties at 50 cents per ton for the defiberized product of said machines. The down payment of $2,000 for each of said machines was not made, neither were any payments of royalties of 50 cents per ton to be applied on the purchase price of said machines made. There were payments amounting to $5,140.09 made to be applied on the royalties for the use of the patent processes as provided in the contract. If appellants' contention that they became the owners of the machines and entitled to possess them as against the respondent can be sustained, it must be upon such proof as to satisfactorily show that it was the intention of respondent corporation that ownership in the machines should be vested in appellants without making any payments therefor. The evidence falls far short of such proof. The court found the value of the machines to be $2,500. The determination of the trial court that respondent was the sole owner of these machines and entitled to their possession is amply supported by the evidence, as is also the finding as to the value of the machines.

We are in accord with the determination reached by the trial court and the judgment is therefore affirmed.

Tuttle, J., and Pullen, P. J., concurred.