[Civ. No. 18705.   First Dist., Div. Two.   Apr. 20, 1960.]

MAURICE THORNER, Appellant, v. SELECTIVE CAM TRANSMISSION COMPANY (a Corporation), Respondent.

Howe, Finch & Glass for Appellant.

Simeon E. Sheffey and S. A. Steindorf for Respondent.

DOOLING, J.—Plaintiff appeals from an order dismissing his actions (consolidated for trial) to recover the balance due on five promissory notes executed by respondent and payable to Douglas Investments Limited at Montreal, Canada. Appellant sued as assignee and it is admitted that the assignment was for collection only. It is likewise admitted that Douglas Investments Limited is a Canadian corporation not qualified to do business in California. The motion to dismiss was granted on the ground that the actions were precluded by section 6801 of the Corporations Code which provides in part: "A foreign corporation subject to the provisions of Chapter 3 of this part which transacts intrastate business in this State without complying therewith shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this State, commenced prior to compliance with Chapter 3. . . ."

Corporations Code, section 6203, provides: " 'Transact intrastate business' means entering into repeated and successive transactions of its business in this State, other than interstate or foreign commerce."

"The burden of proving that section 6801 precludes maintenance of an action is upon the party pleading the bar of the statute." (*Automotriz etc. De California* v. *Resnick,* 47 Cal.2d 792, 794 [306 P.2d 1, 63 A.L.R.2d 1042].) The primary and controlling question in this case is whether respond-

ent met this burden of proof. We have concluded that it did not.

Respondent's entire case depends on the following two facts: 1. The complaint alleges as to each note that "in the City of San Bruno, County of San Mateo, State of California, defendants made, executed and delivered to Douglas Investments Limited" such note. (The notes are all made payable "at Montreal, Canada.") 2. The following answer to the following question by the respondent's witness Regan:

"Q. Where were these negotiations carried on, with reference to the notes? A. Either in San Francisco or Beverly Hills, in all cases."

It is settled that "transacting intrastate business" within the meaning of sections 6801 and 6203 Corporations Code has a narrower meaning than the words "doing business in this State" in section 411, subdivision 2, Code of Civil Procedure, authorizing service of summons in this state upon a foreign corporation. (*Carl F. W. Borgward, G.M.B.H.* v. *Superior Court*, 51 Cal.2d 72, 75-77 [330 P.2d 789].)

Even though negotiations are carried on within the State by an agent of a foreign corporation which lead to the making of a contract with the foreign corporation the corporation is not "transacting intrastate business" within the state where the final acceptance of the offer which results from the negotiations is made by the foreign corporation at its office outside of the State of California. (*Charlton Silk Co.* v. *Jones*, 190 Cal. 341 [212 P. 203].) The Charlton case was one in which the agent of the foreign corporation solicited orders for goods in California which orders were accepted and filled by the foreign corporation at its home office. The rule should be and is no different if the commodity dealt in is money rather than goods. The rule, supported by citation of authorities is thus stated in 20 Corpus Juris Secundum, Corporations, section 1839, page 55: ". . . a foreign corporation is not doing, transacting, carrying on, or engaging in business in a state, by making loans outside the state to residents thereof, on applications obtained by agents of the corporation acting within the state, where the application is transmitted to the foreign corporation at a point outside the state for acceptance or rejection, and the loan is made payable outside the domestic state." (17 Fletcher, Cyclopedia Corporations, perm. ed., 1933, § 8491, pp. 535-536; *Union Trust Co. of Maryland* v. *Rodeman*, 220 Wis. 453 [264 N.W. 508] ; *Burlington Sav. Bank* v. *Grayson*, 43 Idaho 654 [254 P. 215] ; *Mortgage Bond Co.*

v. *Stephens,* 181 Okla. 182 [72 P.2d 831]; *General Motors Accept. Corp.* v. *Huron Finance Corp.,* 63 S.D. 597 [262 N.W. 195]; *People's Building, Loan & Saving Ass'n.* v. *Berlin,* 201 Pa. 1 [50 A. 308, 88 Am.St.Rep. 764]; *Jones* v. *General Motors Acceptance Corp.,* 205 Ky. 227 [265 S.W. 620]; *C.I.T. Corp.* v. *Stuart,* 185 Miss. 140 [187 So. 204]; *cf. Kraemer* v. *Coward,* 2 Cal.App.2d 506 [38 P.2d 458].)

The single answer of Regan that the negotiations were carried on in all cases in California fails to negative, and is perfectly consistent with, the fact that the agreement to make the loans may have been finally effected by the officers of the foreign corporation outside of the State of California. ■ The pleading that the notes were made, executed and delivered in California does not negative, and is perfectly consistent with, the fact that the notes may have been delivered in California by the maker depositing them in the mail in California addressed to the foreign corporation at its office outside the State or by delivering them to some banking institution for transfer to the payee pursuant to a previous agreement. (*People* v. *Larue,* 28 Cal.App.2d 748, 753 [83 P.2d 725] and authorities cited.)

That this may well be so is indicated by the following testimony of respondent's only witness: "No, the notes were executed at our San Bruno office. The negotiations were never at San Bruno, they were either at San Francisco or Beverly Hills. That is, the party from Douglas Investment *never made a visit to the office.*" (Emphasis ours.) While this testimony was stricken by the court it points up the improbability that acceptance of the notes by Douglas Investment Limited could have taken place in San Bruno. There is nothing in this allegation of the complaint inconsistent with, or negativing, the fact that the final agreement to lend the money on the notes may have been made by the officers of the foreign corporation at its office outside the state. It lay within respondent's power to prove exactly how the several transactions were negotiated and consummated but it elected for some reason not to do so. Since the burden of proof on this issue was on the respondent the proof made was insufficient to support a finding that the transactions fell within the ambit of the sections of the Corporations Code relied upon.

Appellant attacks the sufficiency of the answer to raise the issue on which the dismissal was based. Since the judgment of dismissal must be reversed any defect in the answer in this respect may be readily cured by amendment.

Appellant also argues by analogy to the cases under the fictitious names statute (Civ. Code, § 2468) as it read prior to 1911 that section 6801 Corporations Code does not bar an action by an assignee. (*Cheney* v. *J. R. Newberry & Co.*, 67 Cal. 126 [7 P. 445]; *Wing Ho* v. *Baldwin*, 70 Cal. 194 [11 P. 565]; *Gray* v. *Wells*, 118 Cal. 11 [50 P. 23]; *Quan Wye* v. *Chin Lin Hee*, 123 Cal. 185 [55 P. 783].) ▆ Under the generally accepted rule in other jurisdictions an assignee of a foreign corporation is barred from suing where the corporation would be barred for failure to comply with the requirements for doing business in the state. (17 Fletcher, Cyclopedia Corporations, § 8523, pp. 625-627 and cases cited in the footnotes; 23 Am.Jur., Foreign Corporations, § 359, pp. 332-333; 20 C.J.S., Corporations, § 1852, p. 76.) To permit an assignee for collection to sue where the corporation is barred by the statute from doing so would so obviously frustrate the purpose of the statute that we are unwilling to place such a narrowly technical construction upon it.

▆ Appellant made a motion for judgment on the pleadings which was denied. The motion was based on the alleged defect in the answer in setting up the bar of section 6801 Corporations Code. No such motion should be granted without allowing an opportunity to amend the answer to cure the defect. (*MacIsaac* v. *Pozzo*, 26 Cal.2d 809, 816 [161 P.2d 449].)

Judgment of dismissal reversed with directions to permit defendant to amend its answer if it so requests.

Draper, J., concurred.

KAUFMAN, P. J.—I dissent.

This is an appeal from a dismissal of appellant's action for the balance due on five negotiable notes executed by the respondent. The complaint alleged the execution of the notes, their endorsement to the appellant, and respondent's default and nonpayment. The answer admitted all of these facts but argued that the appellant lacked the capacity to maintain this action because appellant's endorser was a foreign corporation, not authorized to do business in California. After a hearing, the trial court granted respondent's motion to dismiss pursuant to section 6801 of the Corporations Code on this ground, and entered judgment accordingly. On appeal, it is argued that: Respondent's pleadings and proof fail to meet the requirements of section 6801 of the Corporations Code.

The five notes, payable to Douglas Investments Limited, a Canadian corporation, were executed by the respondent on January 25, 1954; April 12, 1954; May 27, 1954; October 25, 1954; and November 22, 1954. On January 11, 1957, Douglas Investments Limited duly endorsed these notes and delivered them to the appellant. At the trial, *it was stipulated* that the appellant was an assignee for the purpose of collection only and that *Douglas Investments Limited was a foreign corporation not qualified to do business in California.*

Section 6801 of the Corporations Code provides in part: "A foreign corporation subject to the provisions of Chapter 3 of this part which transacts intrastate business in this State without complying therewith shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this State, commenced prior to compliance with Chapter 3 until it has complied with the provisions thereof. . . ."

The burden of proving that section 6801 precludes maintenance of an action is upon the party pleading the statute. (*Automotriz etc. De California* v. *Resnick*, 47 Cal.2d 792 [306 P.2d 1, 63 A.L.R.2d 1042]; *W. W. Kimball Co.* v. *Read*, 43 Cal.App. 342 [185 P. 192]; *McMillan Process Co.* v. *Brown*, 33 Cal.App.2d 279 [91 P.2d 613]; *Indian Ref. Co., Inc.* v. *Royal Oil Co., Inc.*, 102 Cal.App. 710 [283 P. 856].) In order to prove that the statute applies, the respondent had to show that the particular transaction involved here was an intrastate one. Section 6203 of the same code provides:

" 'Transact intrastate business' means entering into repeated and successive transactions of its business in this State, other than interstate or foreign commerce."

Appellant's contention is that the respondent did not meet the burden of proof under the above code sections. Appellant argues that the respondent's answer did not plead that the obligations were intrastate and that there was no pleading of repeated and successive transactions or a pleading of facts showing intrastate business which constituted regular and ordinary business of the corporation. As pointed out above, *in each cause of action, the appellant alleged that the five notes were made, executed and delivered at San Bruno, California, and all of these allegations were admitted.* Respondent is not required to prove matters that are admitted. The uncontroverted evidence indicated that all of the negotiations for the five loans were also carried on exclusively in this state. I agree with the trial court that this was a sufficient showing

of repeated and successive transactions of the Douglas Investments Limited in this state. I am unable to say that as a matter of law, there is no evidence to support the trial court's finding. This must be the view of the majority if this judgment is to be reversed.

In conclusion, I am convinced there is evidence in the record before us to sustain the trial court's finding that the foreign corporation in question was doing intrastate business in California. It is not for us to weigh the evidence. The majority, in effect, weigh the evidence. If there is any evidence in the record to sustain the finding, then the trial court's judgment must stand. A reading of the record, the admissions in the pleadings, plus the testimony and documentary evidence have convinced me there is evidence to sustain the finding and judgment.

I would affirm the judgment of the trial court.

A petition for a rehearing was denied May 20, 1960.