Filed 4/7/16  US Aerospace, LLC v. KMJ/Corbin & Co., LLC CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| US AEROSPACE, LLC, | B258421 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC477764) |
| v. | |
| KMJ/CORBIN & COMPANY, LLP, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

Balonick Law Office, Barney H. Balonick, for Plaintiff and Appellant.

Chapman, Glucksman, Dean, Roeb & Barger, Randall J. Dean and Mark E. DiMaria, for Defendant and Respondent KMJ/Corbin & Company, LLP.

Kendall, Brill & Kelly, Alan Jay Weil and Nicholas F. Daum, for Defendants and Respondents Akin Gump Strauss Hauer & Feld, LLP, David C. Allen, Wilson C. Meeks, III, and Douglas A. Rappaport.

Kinsella Weitzman Iser Kump & Aldisert, Alan Kossoff; Bracewell & Giuliani, Michael C. Hefter, Ryan M. Philp and David A. Shargel for Defendants and Respondents Richard L. Smithline, Michael Loew, Dan Ly, Centrecourt Asset Management LLC, CAMOFI Master LDC and CAMHNZ Master LDC.

U.S. Aerospace, Inc., a Delaware corporation (Aerospace-DE), and Precision Aerostructures, Inc., a California corporation (Precision), sued certain of their officers, board members, and attorneys for breach of fiduciary duty, malpractice, and fraud. Aerospace-DE was not qualified by the California Secretary of State to transact intrastate business when it initiated the lawsuit, and several months later, Precision had its corporate powers, rights, and privileges suspended. Aerospace-DE thereafter became a Minnesota corporation via a merger (Aerospace-MN), and Aerospace-MN and Precision later filed a second amended complaint that included defendant and respondent KMJ/Corbin & Company LLP (KMJ) as a named defendant. When the second amended complaint was filed, Aerospace-MN was not qualified to transact intrastate business in California and Precision's corporate powers remained suspended. We are asked to decide whether the trial court correctly sustained a special demurrer based on provisions of California law that forbid domestic corporations (Precision) from prosecuting civil actions while suspended and forbid foreign corporations (Aerospace-MN) from maintaining lawsuits based upon intrastate business transactions without filing proof of payment of requisite fees, penalties, and taxes.[1]

## I. BACKGROUND

### A. *Legal Background*

A defendant may demur to a complaint on the ground that the plaintiff "does not have the legal capacity to sue." (Code Civ. Proc., § 430.10, subd. (b).) The assertion that a plaintiff lacks capacity to sue is a "plea in abatement," which challenges the "'place, mode, or time of asserting'" a claim as opposed to its merits. (*V & P Trading Co., Inc. v. United Charter, LLC* (2012) 212 Cal.App.4th 126, 133 (*V & P*), citations omitted.) A plea in abatement ordinarily results only in a stay of the action until the basis for

---

[1] Plaintiff and appellant US Aerospace, LLC, which is apparently the successor to Aerospace-MN, takes this appeal from the trial court's ruling. For purposes of this opinion, we consider US Aerospace, LLC to be the same entity as Aerospace-MN.

abatement is removed. (See *County of Santa Clara v. Escobar* (2016) 244 Cal.App.4th 555, 565 (*Santa Clara*); *United Medical Management Ltd. v. Gatto* (1996) 49 Cal.App.4th 1732, 1740 (*United Medical*).) However, a court is entitled to dismiss the action without prejudice if the plaintiff is unable to remedy the defect. (*United Medical*, *supra*, 49 Cal.App.4th at p. 1740.)

A domestic corporation whose powers have been suspended because it failed to pay taxes or file tax returns lacks legal capacity to sue during its suspension. (Rev. & Tax. Code, §§ 23301, 23301.5; *V & P*, *supra*, 212 Cal.App.4th at p. 132.) In order to restore its corporate status and, consequently, its ability to prosecute claims, the suspended corporation must pay all taxes, penalties, and other amounts owed, file an application for relief, and obtain a certificate of revivor from the Franchise Tax Board. (Rev. & Tax. Code, § 23305.)

As to foreign corporations, California law deprives them of legal capacity to sue on claims arising from intrastate business transactions if they do not possess a certificate of qualification to transact business in California from the Secretary of State and satisfy other requirements. Specifically, Corporations Code section 2203 provides as follows: "A foreign corporation . . . which transacts intrastate business without complying with Section 2105 shall not maintain any action or proceeding upon any intrastate business so transacted in any court of this state, commenced prior to compliance with Section 2105, until it has complied with the provisions thereof and has paid to the Secretary of State a penalty of two hundred fifty dollars ($250) in addition to the fees due for filing the statement and designation required by Section 2105 and has filed with the clerk of the court in which the action is pending receipts showing the payment of the fees and penalty and all franchise taxes and any other taxes on business or property in this state that should have been paid for the period during which it transacted intrastate business." (Corp. Code,[2] § 2203, subd. (c).) In other words, under section 2203, a corporation that commences a lawsuit without holding a certificate of qualification must, among other

---

[2]      Undesignated statutory references that follow are to the Corporations Code.

things, file proof of payment of taxes due with the court clerk in order to maintain the action.

Section 2105, the statute referenced in the above-quoted provision in section 2203, establishes the requirements for obtaining a certificate of qualification from the Secretary of State. To do so, a corporation must submit a "statement and designation" listing corporate identity and contact information, consent to service of process in California, designate an agent for service of process, and submit proof of good standing in its foreign state of incorporation. (§ 2105.) The statement and designation section 2105 requires does not compel a corporation to provide information about any of its predecessor entities or to indicate whether the corporation previously conducted intrastate business without being qualified to do so.[3]

### B. The Lawsuit and KMJ's Special Demurrer

New Century Companies, Inc., a Delaware corporation (New Century), was a publicly traded aerospace and defense contractor. New Century acquired Precision, a parts manufacturer, in 2009. In the spring of 2010, New Century became Aerospace-DE.

Precision and Aerospace-DE filed their original complaint alleging breach of fiduciary duty, malpractice, and fraud in January 2012. Precision and Aerospace-DE subsequently filed a first amended complaint in which they named additional defendants, including KMJ, and added a claim for unfair business practices. KMJ is a public accounting firm that provided independent auditing services to Aerospace-DE and/or New Century for approximately one year. Various defendants in the suit demurred to the first amended complaint, and the trial court sustained demurrers with leave to amend.

---

[3] Foreign corporations that transact intrastate business without a certificate of qualification are subject to a $20 penalty for each day of unauthorized business transacted (§ 2203, subd. (a)), and such corporations may be prosecuted for a misdemeanor violation punishable by at least $500 but no more than $1,000 (§ 2258). Foreign corporations that transact intrastate business without being qualified are also deemed to consent to jurisdiction in California if named as a defendant in a civil action. (§ 2203, subd. (a).)

Precision and Aerospace-MN then filed a second amended complaint in which they added new defendants and causes of action. The second amended complaint alleged that from 2009 to early 2011, all named defendants damaged Aerospace-DE, New Century, and Precision through usurping control for personal benefit, self-serving and conflicted transactions, fraud, and incompetence. Because the outcome of this appeal turns partly on the corporate status and business locations of the entities involved, we quote the relevant allegations in the second amended complaint: "Plaintiff [Aerospace-MN] is a Minnesota corporation, with its principal place of business in Minneapolis, Minnesota. At the time of the operative events alleged below, [Aerospace-MN] was a Delaware corporation, with its principal place of business in Rancho Cucamonga, California. [Aerospace-DE] was previously known as [New Century], and its principal place of business was previously in Santa Fe Springs, California, and it previously did business in Victorville, California." The complaint further alleged KMJ was a limited liability company doing business in Costa Mesa, California.

On December 4, 2013, KMJ filed a special demurrer to the second amended complaint. KMJ asserted that neither Precision nor Aerospace-MN possessed "the legal capacity to bring suit in [California] on the matters alleged in the [second amended complaint]" because Precision had been suspended as a California corporation and Aerospace was a foreign corporation not qualified to transact business in California.[4] In support of its demurrer, KMJ submitted copies of documents from the California Secretary of State showing (1) the California Franchise Tax Board had suspended Precision as a domestic corporation on April 2, 2012, "pursuant to the provisions of the California Revenue and Taxation Code," and (2) the state had no corporate record of

---

[4] A demurrer for lack of capacity typically must be brought as soon as possible; otherwise it is deemed to be waived. (See, e.g., *Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1605.) KMJ was never served with the first amended complaint and only became aware of the suit upon service of the second amended complaint in October 2013. Thus, it had no opportunity to challenge Aerospace's legal capacity until it received the second amended complaint.

5

New Century, Aerospace-DE, or Aerospace-MN.  KMJ argued the allegations of the second amended complaint demonstrated the claims arose from transactions and events that occurred "in California, among and between California-based individuals."  KMJ further contended California was Aerospace-DE and New Century's place of business at the time of the events alleged in the complaint, and that all of the defendants' alleged misconduct took place in California.

### C.    Hearings on KMJ's Special Demurrer

At an initial hearing held on KMJ's demurrer, counsel for Precision and Aerospace-MN acknowledged his clients lacked capacity to maintain suit.  The court continued the hearing and issued an order to show cause why the case should not be dismissed.  In the meantime, the court stayed the action.

Precision thereafter filed a statement of information[5] with the Secretary of State but it included no evidence, such as a certificate of revivor or certificate of good standing, to indicate its corporate powers had been restored.  Aerospace-MN did obtain a certificate of qualification to transact intrastate business from the Secretary of State, effective March 14, 2014.[6]  Aerospace-MN did not, however, file any receipts or other documents with the clerk of the court in which its lawsuit was pending "showing the payment of the fees and penalty and all franchise taxes and any other taxes on business or property in this state that should have been paid for the period during which it transacted intrastate business."  (§ 2203, subd. (c).)

---

[5]    Domestic corporations and foreign corporations transacting interstate business must file an annual statement of information which describes the location of the corporation's principal office; contact information for its officers, directors, and agent for service of process; and the nature of its business.  (§§ 1502, 2117.)

[6]    As we have explained, the statement and designation a corporation files to obtain a certificate of qualification does not require the corporation to provide information about predecessor entities or the date on which the corporation began transacting intrastate business.  Thus, it is possible, as it was here, that a qualification certificate will issue where the corporation has not paid applicable taxes and other amounts due.

When the parties appeared for the continuation of the hearing on KMJ's demurrer and the court's order to show cause, KMJ continued to argue that both Precision and Aerospace-MN lacked capacity to sue: Precision, because its corporate powers remained suspended, and Aerospace-MN, because, notwithstanding the certificate of qualification it obtained, it had still failed to file proof of payment of fees, penalties, and taxes for the period when it transacted intrastate business without being qualified. In addition, because the claims in the lawsuit did not originally belong to Aerospace-MN, but rather to Aerospace-DE and New Century, KMJ maintained that Aerospace-MN could not continue to prosecute the action unless it showed that these two predecessors had the requisite capacity to sue as well. KMJ argued the court should dismiss the entire action without prejudice and refuse to provide either plaintiff (i.e., Aerospace-MN or Precision) further time to comply.

The court found neither plaintiff had demonstrated capacity to maintain the lawsuit and asked KMJ's counsel to prepare an order "that would specify, with authorities, what each of the plaintiffs have to do, and [the court will] set a date maybe 20 days from now to obtain a declaration from the plaintiffs that they will perform these responsibilities, and that they have ascertained how long it will take them to complete each of these steps, and then [the court will] consider setting a further period during which they will actually accomplish these steps." The court stated it would prefer to see plaintiffs "elect not to proceed once they ascertain the taxes, and fees that are owed by each corporation" rather than dismiss the case when plaintiffs could argue "that they thought they were in compliance, and through inadvertence were not in compliance."

The resulting court order, issued on March 28, 2014, required Aerospace-MN and Precision to file declarations of corporate officers setting forth the precise actions they would take to establish and document their legal capacity to maintain the lawsuit. The order specified what steps needed to be taken by each plaintiff, with cites to relevant case law and statutory provisions. Aerospace-MN, for example, was required to show how it acquired the claims of Aerospace-DE and New Century, that all three entities were in good standing in their states of incorporation, and that each had "satisfied all legal

7

requirements to establish its legal capacity to maintain [the] action as a foreign corporation which was not qualified to do business in California at the time the action was filed," including payment of all taxes owed while the entities were transacting intrastate business and the filing of receipts with the clerk of the court showing such payments had been made.

On April 9, 2014, Aerospace-MN and Precision filed a declaration from Charles Arnold, who purported to be "a properly qualified corporate officer of [Aerospace-MN]" but did not further specify his position. Arnold stated that New Century changed its name to Aerospace-DE on April 8, 2010, Aerospace-MN was formed on May 1, 2013, and Aerospace-DE merged into that new company two days later. Arnold asserted that Aerospace-MN was presently qualified to do business in California and in good standing in both California and Minnesota. He further averred that Aerospace-MN "does not do business in California, and is not delinquent in filing any tax returns or paying . . . any taxes or fees in California." With respect to predecessors Aerospace-DE and New Century, Arnold stated he had conversations with unnamed persons at the California Franchise Tax Board and on that basis believed those two entities were "considered . . . holding compan[ies] under the holding company exception of California Revenue and Taxation Code section 23102" and, consequently, owed no taxes or fees for "any time relevant to the operative complaint . . . ." As for Precision, Arnold indicated that a return to active status would require filing state tax returns for the years 2006 through 2013, paying $6,777.82 in taxes, and paying a $519 reinstatement fee. Arnold estimated it would take 60 to 90 days to complete Precision's returns, assuming it could locate the necessary documents.

The trial court held a hearing after submission of the Arnold declaration and found it defective because it was incomplete, conclusory, relied upon hearsay, and failed to establish the declarant's competence. The court ruled that Precision and Aerospace-MN's evidence was therefore inadequate to establish they would be able to demonstrate capacity. But again wishing to avoid dismissing the matter given plaintiffs' attempts to proceed with the action, the court ordered Precision and Aerospace-MN to file new

8

declarations of persons with competent knowledge demonstrating that they understood what was needed to establish legal capacity and stating whether and by when they could do so.

Precision and Aerospace-MN thereupon filed a declaration signed by their attorney acknowledging Precision had none of the documents necessary to file past returns and regain active status. The two entities also resubmitted the same declaration from Charles Arnold they had previously filed. Counsel for Precision and Aerospace-MN asked the trial court to deem Aerospace-MN to have legal capacity to proceed and to open discovery, which would allow Precision to request documents from various defendants it could attempt to use in completing and filing tax returns in order to revive its corporate status.

The court held another hearing after Precision and Aerospace-MN filed these declarations. The court informed Precision that it must submit a declaration of a corporate officer that would specify which documents it needed in order to file past returns, why it did not have such documents, and why it believed someone else did. With respect to Aerospace-MN, the court concluded that KMJ's demurrer on the issue of corporate capacity to sue was ripe for decision and accordingly set a date for hearing the demurrer.

In advance of the hearing, Aerospace-MN filed an opposition to KMJ's special demurrer. Aerospace-MN argued it possessed legal capacity to maintain suit because it was qualified to do business in California, it did not owe any franchise taxes, and its predecessors did not owe any franchise taxes. In reply, KMJ maintained that Aerospace-MN had failed to comply with section 2203, subdivision (c) of the Corporations Code and failed to provide "competent foundational evidence to show what penalties, fees, and taxes it actually does or does not owe . . . ." KMJ additionally argued Aerospace-MN could not continue to prosecute the lawsuit because the suit advanced claims Aerospace-MN acquired from foreign corporations that never qualified to do business in California and that could not be considered mere holding companies based on the evidence presented.

9

After hearing argument from both sides at the scheduled demurrer hearing, the trial court sustained the demurrer without leave to amend and dismissed all of Aerospace-MN's claims in the second amended complaint against all defendants. The court reasoned that Aerospace-MN's current qualification to do business in California did not "mean that [it] ha[d] legal capacity to bring suit based upon the earlier entities' claims based upon intrastate commerce." The court referred to statements in the second amended complaint indicating that at the time of the alleged misconduct, Aerospace-DE and New Century's principal places of business were in California. The court found that the action, "as alleged in the [second amended complaint], [was] brought upon intrastate business which allegedly was transacted by [New Century] and [Aerospace-DE] in the State of California . . . ." Although New Century and Aerospace-DE engaged in intrastate business, the court concluded neither entity obtained a certificate of qualification to transact such business. In addition, the court concluded Aerospace-MN was not qualified to transact intrastate business at the time it filed its claims and it had not, since then, filed receipts with the clerk of court showing payments of fees or taxes owed.

Based on these conclusions, the court found Aerospace-MN lacked capacity to prosecute the lawsuit because of its own deficiencies, and because the lawsuit involved claims of predecessor entities that also lacked capacity: "[Aerospace-MN] acquired the claims it asserts in this action through the merger of [Aerospace-DE] into [Aerospace-MN]. [Aerospace-MN] has not established that it is qualified under Corporations Code section 2203(c) to prosecute claims based on intrastate transactions. Moreover, [Aerospace-MN], as the assignee of claims once owned by [Aerospace-DE] and [New Century], must establish that those predecessor corporations were qualified to do business in California at the time of the intrastate transactions giving rise to the claims asserted by [Aerospace-MN]." The court emphasized that Aerospace-MN had failed to comply with the prerequisites to maintain suit despite the court's efforts to provide "ample opportunity" to demonstrate its legal capacity.

10

As for Precision, the company did not file any further documents in response to the court's previous order to submit a declaration from a corporate officer specifying the documents it wanted to obtain from defendants. Consequently, the court also dismissed all of Precision's claims in the second amended complaint against all defendants which, when combined with its ruling as to Aerospace-MN, resulted in dismissal of the second amended complaint in its entirety, without prejudice.[7] Aerospace-MN, but not Precision, appeals the dismissal.

## II. DISCUSSION

On appeal, Aerospace-MN continues to argue it could legally maintain the lawsuit because the requirements of Corporations Code section 2203 were satisfied; the company was qualified to do business in California and its predecessors were holding companies not subject to state taxes. Aerospace-MN also raises a new argument for the first time in its reply brief, namely, that KMJ did not prove the underlying action arose out of intrastate business transactions, which is a condition for proving lack of capacity to sue under section 2203. Finally, Aerospace-MN posits that if it needed to take additional actions to establish capacity, the trial court should have granted leave to amend to give it yet another opportunity to do so.

We hold Aerospace-MN's arguments for reversal lack merit. Even if Aerospace-MN had itself become qualified to maintain the lawsuit, it failed to demonstrate that the

---

[7]     The trial court expressly dismissed Precision's claims without prejudice but did not specify, either in open court or its written order, whether it was dismissing Aerospace-MN's claims with or without prejudice. We understand the dismissal to have been without prejudice, however, for the following reasons. First, KMJ argued that the complaint should be dismissed without prejudice. Second, the court based its decision to dismiss on *United Medical*, *supra*, 49 Cal.App.4th at p. 1740, which states "[i]f the foreign corporation fails to comply [with 2203, subdivision (c)], the matter should be dismissed without prejudice." Third, the court gave no indication why it would treat Aerospace-MN's lack of capacity to sue any differently from Precision's lack of capacity to sue.

11

original holders of the claims asserted in the suit—predecessors-in-interest Aerospace-DE and New Century—were, or were likely to become, qualified to maintain the action.

A.     *Standard of Review*

Aerospace-MN and KMJ dispute what standard of review we should employ. Aerospace-MN asserts we should independently review (de novo) a demurrer sustained without leave to amend, assuming the truth of all properly pleaded facts and reversing if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) KMJ, on the other hand, argues that we should review the trial court's decision for abuse of discretion because KMJ's challenge to Aerospace-MN's capacity to sue was a plea in abatement, and a decision whether or not to abate a proceeding is reviewed under that standard. (See, e.g., *Ballard v. State Bar* (1982) 35 Cal.3d 274, 287, fn. 22 [State Bar's decision not to abate an attorney disciplinary proceeding based on the attorney's ability to assist in his defense].) We find it unnecessary to resolve the dispute because we are convinced, for reasons we shall describe, that the trial court's judgment should be affirmed even applying the more permissive de novo standard of review.

B.     *Analysis*

1.     *Aerospace-MN lacks capacity to prosecute the lawsuit*

A defendant may demur to a complaint filed by a foreign corporation plaintiff that has failed to comply with section 2203, subdivision (c). (*United Medical*, *supra*, 49 Cal.App.4th at p. 1740.) When a plaintiff acquires a claim from a corporation that itself lacked capacity to sue under section 2203, the plaintiff effectively takes upon itself that same lack of capacity. (See, e.g., *Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 311 (*Cal-Western*) [when a plaintiff is assigned a cause of action, ""'[t]he assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to any defenses which the obligor has against the assignor prior to

12

notice of the assignment"'''" (italics omitted)]; see also *Thorner v. Selective Cam Transmission Co.* (1960) 180 Cal.App.2d 89, 93 (*Thorner*).)

In *Cal-Western*, a corporation whose powers were suspended for failure to pay taxes assigned its right to enforce a judgment to the plaintiff, who filed suit on the judgment four years later. (*Cal-Western*, *supra*, 221 Cal.App.4th at p. 306.) The reviewing court affirmed the trial court's dismissal of the case on the ground that the plaintiff that inherited the suspended corporation's lack of capacity had no intention of paying the assignor's taxes in order to revive its corporate status. (*Id.* at pp. 312-313.) Additionally, in *Thorner*, the court explained that where a company that lacks capacity to sue transfers its legal claims to another, allowing the latter to prosecute the transferred claims would "so obviously frustrate the purpose of the statute [barring suit by the original claim holder] that we are unwilling to place such a narrowly technical construction upon it." (*Thorner*, *supra*, 180 Cal.App.2d at p. 93.)

In this case, the claims Aerospace-MN seeks to prosecute are claims arising from events that occurred from 2009 to 2011 involving Aerospace-DE and New Century (before Aerospace-DE filed suit in 2012). Aerospace-MN was substituted as a plaintiff for Aerospace-DE in 2013 and did not obtain a certificate of qualification until 2014. Consequently, Aerospace-MN must have acquired the claims it seeks to prosecute from Aerospace-DE, which itself acquired claims from New Century. Because neither Aerospace-DE nor New Century had a certificate of qualification to transact business in California at the time suit was commenced, those entities' lack of legal capacity to sue was assumed by Aerospace-MN. Even if, as Aerospace-MN contends, it obtained a certificate of qualification (or did not need one because it does no business in California) and each successor entity resulted from a mere "name change" from its predecessor, Aerospace-MN was still obligated to show that the relevant predecessor was qualified to transact business in California when the action was filed. (Cf. *Capital Gold Group, Inc. v. Nortier* (2009) 176 Cal.App.4th 1119 [Nevada corporation plaintiff that converted to a Delaware corporation and changed its name while action was pending did not lose its ability to maintain suit in California because it was qualified to transact business in

13

California when it commenced the action and it duly obtained a new certificate of qualification upon conversion].)

Aerospace-MN argues the two predecessor entities, New Century and Aerospace-DE, need not provide receipts of payments of taxes and fees to the clerk of court in accordance with section 2203, subdivision (c) because the predecessor entities were mere holding companies and therefore exempt from the obligation to pay any taxes or fees for transacting intrastate business. Thus, says Aerospace-MN, neither it nor its two predecessors is obligated to perform any further actions in order to establish capacity to sue. Aerospace-MN, however, is incorrect.

Revenue and Taxation Code section 23102 states that "[a]ny corporation holding or organized to hold stock or bonds of any other corporation or corporations, and not trading in stock or bonds or other securities held, and engaging in no activities other than the receipt and disbursement of dividends from stock or interest from bonds, is not a corporation doing business in [California] for the purposes of [the corporation franchise tax]." If a holding company receives dividends and interest from California sources, however, it remains subject to corporate income tax. (Rev. & Tax. Code, §§ 23101, subd. (b), 23501, subd. (c).) And holding companies that are incorporated in California or qualified to transact intrastate business are subject to a minimum franchise tax after their first taxable year "even if they do not actually do business in [California]." (Rev. & Tax. Code, §§ 23153, subd. (f)(1), 23501, subd. (c).)

While it is possible Aerospace-MN itself is a holding company, the record shows otherwise for its predecessors Aerospace-DE and New Century. The allegations of Aerospace-MN's second amended complaint refer to activities of Aerospace-DE and New Century going well beyond "the receipt and disbursement of dividends from stock or interest from bonds . . . ."[8] (Rev. & Tax. Code, § 23102.) In addition, Aerospace-MN claimed that Aerospace-DE and New Century were holding companies based solely on

---

[8]     For example, the operative complaint states such companies were bidding on government contracts, working on a joint venture with a Russian aircraft business, receiving loans, maintaining accounts payable and payroll, and dealing with customers.

14

the deficient Charles Arnold declaration—specifically, his conversations with unnamed employees of the Franchise Tax Board. As the trial court concluded, that is insufficient.

Not only has Aerospace-MN failed to show Aerospace-DE and Precision had legal capacity to sue, Aerospace-MN has not established its own legal capacity to maintain suit. Although Aerospace-MN acquired a certificate of qualification, it did not file receipts with the clerk of court showing payment of all necessary fees, penalties, and taxes. (See § 2203, subd. (c); *United Medical*, *supra*, 49 Cal.App.4th at p. 1738.) And even if Aerospace-MN is a holding company that never transacted business of its own in California, it would have at a minimum needed to pay and document payment of the $250 penalty under section 2203, subdivision (c) and the fees for filing the section 2105 statement and designation.

Aerospace-MN nonetheless counters with an argument—made for the first time in its reply brief—that section 2203 is entirely inapplicable because its lawsuit is not based upon the transaction of *intra*state business, a matter it argues KMJ was obligated to establish in its demurrer. (§ 2203, subd. (c) [foreign corporations unqualified to transact intrastate business may not "maintain any action or proceeding upon any intrastate business"]; *United Medical*, *supra*, 49 Cal.App.4th at p. 1740 ["defendant bears the burden of proving: (1) the action arises out of the transaction of intrastate business by a foreign corporation; and (2) the action was commenced by the foreign corporation prior to qualifying to transact intrastate business"].) By failing to raise this argument in its opening brief, or in the trial court for that matter, the argument is forfeited. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11; *Los Angeles Memorial Coliseum Commission v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803, 822; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.)

Even if not waived, Aerospace-MN's position is unconvincing. A "proceeding upon any intrastate business," as described in section 2203, means a claim arising from an intrastate transaction or occurrence. (*United Medical*, *supra*, 49 Cal.App.4th at pp. 1737, 1740.) Here, the second amended complaint reveals the claims arose from intrastate transactions. The complaint specifies that Aerospace-DE, New Century, and

15

Precision, the alleged victims in this case, all maintained their principal offices in California. The complaint further alleges that all defendants, the alleged perpetrators of fraud, malpractice, and breaches of fiduciary duty against Aerospace-DE, New Century, and Precision, did business in California.[9] Among the allegations are claims that various defendants entered into self-dealing and fraudulent transactions with the corporate plaintiffs and "stole company equipment, customers and revenues." The complaint also describes specific instances of misconduct that took place in Victorville, California.

Thus, the facts alleged in the complaint indicate the claims it presents arose from intrastate business. This is true when considering KMJ in particular. KMJ was located in Costa Mesa, California, and the claims against it relate to auditing services it provided to Aerospace-DE and/or New Century, both of which had their principal places of business in California. In addition, one of the specific allegations regarding KMJ refers to its work on New Century's acquisition of Precision, that is, the purchase of a California corporation located in California by a corporation with its principal place of business in California. The alleged facts therefore show that Aerospace-MN's action is "upon [ ] intrastate business." (§ 2203, subd. (c).) That certain causes of action might be governed by the substantive laws of a different state, such as Delaware corporate law, is unrelated to whether the alleged misconduct arose from intrastate business.[10]

---

[9]    Some of the defendants were officers and directors of Aerospace-DE and Precision. Others, including KMJ, were professional advisors with offices in California.

[10]    In its argument that KMJ failed to establish *the lawsuit's claims* arose out of intrastate business, Aerospace-MN makes an analytically distinct point, namely, the argument KMJ failed to show that Aerospace-DE and New Century transacted intrastate business. (§§ 191, 2203, subd. (c).) This argument, too, is forfeited and unavailing. "'[T]ransact[ing] intrastate business' means entering into repeated and successive transactions of its business in this state, other than interstate or foreign commerce." (§ 191, subd. (a).) A foreign corporation does not transact intrastate business "merely because its subsidiary transacts intrastate business" (§ 191, subd. (b)) or "solely by reason of" prosecuting or defending a lawsuit, holding board or shareholder meetings, or seeking sales orders where the orders are accepted outside the state, among other activities (§ 191, subd. (c)). The second amended complaint reveals that Aerospace-DE and New Century performed business transactions beyond the activities described in section 191,

## 2. *The trial court properly denied Aerospace-MN leave to amend*

"The burden of proving [a] reasonable possibility [of a curative amendment] is squarely on the plaintiff." (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) "To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action. [Citations.] Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890; accord, *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of the pleading].)

The trial court did not abuse its discretion by denying Aerospace-MN further opportunity to cure its capacity defects. Aerospace-MN was aware of the deficiencies for more than six months, and the court provided it repeated opportunities to establish compliance, even going so far as to order defendants to provide guidance on what it must do to comply. At no point did Aerospace-MN propose an amended complaint or describe how it would use additional time to cure the defects. Indeed, Aerospace-MN's position both in the trial court and on appeal has been that it possessed capacity to sue and therefore could do nothing more to cure any perceived defect. Under the circumstances, the trial court properly concluded there was no reasonable likelihood of Aerospace-MN curing the problem with additional time.

Permitting this lawsuit to proceed under the circumstances would have undermined the purpose of section 2203. (See *United Medical*, *supra*, 49 Cal.App.4th at p. 1741 [obligation to obtain a certificate of qualification, and the prohibition on maintaining a lawsuit prior to receiving a certificate, are intended to prevent tax evasion and to equalize the treatment of foreign and domestic corporations]; *Neogard Corporation v. Malott & Peterson-Grundy* (1980) 106 Cal.App.3d 213, 215-216 [same

---

subdivision (c). For example, Aerospace-DE and New Century, at minimum, maintained their principal offices in the state and engaged professional advisors like KMJ to provide business services in the state.

17

Corporate Code provisions "designed to facilitate service of process on and to prevent tax evasion by out-of-state corporations"].) We hold the trial court properly dismissed the action and denied leave to amend.

DISPOSITION

The judgment is affirmed. Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

TURNER, P.J.

KUMAR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.